ACCEPTED
01-14-00843-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
4/2/2015 3:40:44 PM
CHRISTOPHER PRINE
CLERK

## CASE NO. 01-14-00843-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
4/2/2015 3:40:44 PM
CHRISTOPHER A. PRINE
Clerk

## IN THE COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS HOUSTON, TEXAS

### RAYMOND ESPINOSA,

*Appellant,*

**v.**

### AARON'S RENTS, INC., AARON'S INC., AARON'S SALES & LEASE OWNERSHIP, and NICOLE LEE,

*Appellees.*

## On Appeal from the District Court of Harris County, Texas, 129th Judicial District
## Cause Number 2010-70720

## BRIEF OF APPELLEES

Dion Y. Kohler
Georgia Bar No. 427715
*Admitted Pro Hac Vice*
JACKSON LEWIS P.C.
1155 Peachtree Street, Suite 1000
Atlanta, Georgia 30309-3600
 (404) 525-8200 [Telephone]
 (404) 525-1173 [Facsimile]

Virginia Mixon Swindell
Texas State Bar No. 00794711
JACKSON LEWIS P.C.
1415 Louisiana, Suite 3325
Houston, TX 77002-7332
(713) 650-0404 [Telephone]
(713) 650-0405 [Facsimile]

**ATTORNEYS FOR APPELLEES**

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………..…..ii

TABLE OF AUTHORITIES……………………………………….....iv

IDENTITY OF PARTIES AND COUNSEL…………………………....x

STATEMENT OF THE CASE…………………………………......xii

STATEMENT REGARDING ORAL ARGUMENT……………………....xiv

ISSUES PRESENTED……………………………………………...xv

I.    STATEMENT OF FACTS…………………………………....1

    A.    FACTUAL BACKGROUND…………………………....1

        1.    Espinosa's Employment with Aaron's…………………1

        2.    Events Leading up to Espinosa's Arrest and Prosecution...1

        3.    Espinosa Files For Chapter 7 Bankruptcy………………….9

    B.    PROCEDURAL BACKGROUND……………………………..11

    C.    SUMMARY OF THE ARGUMENT……………………………..14

II.    ARGUMENT………………………………………………...16

    A.    ESPINOSA IS ONCE AGAIN ATTEMPTING TO DECEIVE THE TRUSTEE AND HIS CREDITORS BY BRINGING THIS APPEAL…………………………………………………....16

    B.    ESPINOSA'S CLAIMS AGAINST AARON'S ARE BARRED UNDER THE DOCTRINE OF JUDICIAL ESTOPPEL……….17

        1.    Any Reliance By the Trial Court on Federal Law Was Proper……………………………………………………..17

  **2.**  **Espinosa Is Judicially Estopped under Both the Texas and Federal Standards for Judicial Estoppel………………….....23**

  **3.**  **No Alleged Equitable Considerations Weigh against Application of Judicial Estoppel…………………………....44**

 **C.** **ESPINOSA'S MALICIOUS PROSECUTION CLAIM FAILS AS A MATTER OF LAW……………………………….…45**

  **1.**  **Aaron's Did Not Act With Malice………………….....47**

  **2.**  **Espinosa Failed to Rebut the Presumption that Aaron's Had Probable Cause to Make a Report to the Police……..48**

  **3.**  **Aaron's Did Not Initiate or Procure the Prosecution of Espinosa…………………………………………..50**

 **D.** **ESPINOSA'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM FAILS AS A MATTER OF LAW………...51**

 **E.** **ESPINOSA'S DEFAMATION CLAIM FAILS AS A MATTER OF LAW……………………………………………...52**

**III.** **CONCLUSION AND PRAYER…………………………...54**

**CERTIFICATE OF COMPLIANCE……………………………….....56**

**CERTIFICATE OF SERVICE………………………………………..57**

**APPENDIX**

iii

# TABLE OF AUTHORITIES

**CASES**                                                                     **PAGES(S)**

*Ah Quin v. County of Kauai DOT*,
733 F.3d 267 (9th Cir. 2013)................................................................30

*Akin v. Dahl*,
661 S.W.2d 917 (Tex. 1983)................................................................48

*Andrews v. Diamond, Rash, Leslie & Smith*,
959 S.W.2d 646 (Tex. App.—El Paso 1997, writ denied) ....................22, 32, 33

*Antonov v. Walters*,
168 S.W.3d 901 (Tex. App.—Fort Worth 2005) .............................11

*Arrendondo v. Rodriguez*,
No. 14-09-00857-CV, 2011 Tex. App. LEXIS 584 (Tex. Ct. App.---Hou.
[14th Dist.] 2011, no pet.)...................................................................49

*Arrow Marble, LLC v. Killion*,
441 S.W.3d 702 (Tex. App.—Hou. [1st Dist.] 2014, no pet.).........................35

*Backman v. J.C. Penney Co.*,
No. 14-03-00436-CV, 2004 Tex. App. LEXIS 9003 (Tex. Ct. App.---
Hou. [14th Dist.] 2004, no pet.) .......................................................48

*Bailey v. Barnhart Interest, Inc.*,
287 S.W.3d 906 (Tex. App.—Hou. [14th Dist.] 2009, no pet.) .................22, 30

*Balaban v. Balaban*,
712 S.W.2d 775 (Tex. App.—Hou. [1st Dist.] 1986, writ ref'd n.r.e) ..............40

*Bennett v. Grant*,
2014 Tex. App. LEXIS 8849 (Tex. App.—Austin Aug. 13, 2014)...................51

*Bhatia v. Woodlands North Houston Heart Center, PLLC*,
396 S.W.3d 658 (Tex. App.—Hou. [14th Dist.] 2013, pet. for review
denied)...................................................................................................36

*Biesek v. Soo Line Railroad Co.*,
440 F.3d 410 (7th Cir. 2006)................................................................30

*Brown v. Swett & Crawford of Tex., Inc.*,
   178 S.W.3d 373 (Tex. App.—Hou. [1st Dist.] 2005, no pet.)....................passim

*Bunnell v. Lewis*,
   1993 WL 290781 (Tex. App.—Hou. [14th Dist.] July 27, 1993) .....................40

*Clear Lake Ctr., L.P. v. Garden Ridge, L.P.*,
   416 S.W.3d 527 (Tex. App.—Houston [14th Dist.] 2013, no pet.)...................18

*Cricket Commc'ns, Inc. v. Trillium Indus. Inc.*,
   235 S.W.3d 298 (Tex. App.—Dallas 2007, reh'g denied).........................passim

*D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co.*,
   300 S.W.3d 740 (Tex. 2009).......................................................18

*Dallas Sales Co., Inc. v. Carlisle Silver Co., Inc.*,
   134 S.W.3d 928 (Tex. App.—Waco 2004, pet. for review denied) .....................
   ...................................................................... 19, 23, 34, 43

*Davis v. Household International, Inc.*,
   No. 05-90-01553-CV, 1991 Tex. App. LEXIS 3301 (Tex. App.---Dallas
   1991, no writ) .................................................................53

*Davis v. Prosperity Bank*,
   383 S.W.3d 795 (Tex. Ct. App.—Hou. [14th Dist.] 2012, no pet.).....................
   ...................................................................... 47, 50, 51, 53

*Dow Chem. Co. v. Francis*,
   46 S.W.3d 237 (Tex. 2001).......................................................46

*Dunmore v. U.S.*,
   358 F.3d 1107 ..................................................................31

*Erie v. R.R. v. Thompkins*,
   304 U.S. 64 (1938).............................................................23

*Ferguson v. Building Materials Corp. of Am.*,
   276 S.W.3d 45 (Tex. App.—El Paso 2008, pet. for review granted, rev'd,
   remanded) .................................................................passim

*Ferguson v. Building Materials Corp. of Am.*,
   295 S.W.3d 642 (Tex. 2009)..................................... 20, 21, 37, 42

v

*First Valley Bank of Los Fresnos v. Martin*,
  55 S.W.3d 172 (Tex. App.—Corpus Christi 2001)..........................................51

*First Valley Bank v. Martin*,
  144 S.W.3d 466 (Tex. 2004)...................................................................51

*Flores v. Deutsche Bank Nat'l Trust Co.*,
  2014 Tex. App. LEXIS 9318 (Tex. App.—Fort Worth Aug. 21, 2014, no
  pet.) ...............................................................................................21, 37

*Forbes, Inc. v. Granada Biosciences, Inc.*,
  124 S.W.3d 167 (Tex. 2003)...................................................................46

*Freedom Communications, Inc. v. Coronado*,
  372 S.W.3d 621 (Tex. 2012)...................................................................11

*Galley v. Apollo Associated Servs., Ltd.*,
  177 S.W.3d 523 (Tex. App.—Hou. [1st Dist.] 2005, no pet.)..........................39

*Garcia v. BNSF Railway Co.*,
  387 S.W.3d 763 (Tex. App.—El Paso 2012, no pet.)...............................passim

*Hoffmann-La Roche, Inc. v. Zeltwanger*,
  144 S.W.3d 438 (Tex. 2004)...................................................................52

*In re Coastal Plains*,
  179 F.3d 197 (5th Cir. 1999)...............................................................passim

*In re Superior Crewboats, Inc.*,
  374 F.3d 330 (5th Cir. 2004)..............................................................passim

*Jackson v. Hancock & Canada, L.L.P.*,
  245 S.W.3d 51 (Tex. App.—Amarillo 2007, pet. for review denied) ........passim

*Kane v. Nat'l Union Fire Ins. Co.*,
  535 F.3d 380 (5th Cir. 2008)...............................................................31, 44

*Kroger Tex. L.P. v. Suberu*,
  216 S.W.3d 788 (Tex. 2006)...........................................................46, 48, 49

*Lewis v. Continental Airlines*,
  80 F. Supp. 2d 686 (S.D. Tex. 1999)....................................................50, 51

*Long v. Knox*,
 155 Tex. 581 (Tex. 1956)................................................................. 21, 37, 38, 45

*Norris v. Brookshire Grocery Co.*,
 362 S.W.3d 226 (Tex. App.—Dallas 2012, pet. for review denied) .................35

*O'Melveny & Myers v. FDIC*,
 512 U.S. 79 (1994)......................................................................................21

*Pleasant Glade Assembly of God v. Schubert*,
 246 S.W.3d 1 (Tex. 2008)...........................................................................21

*Praytor v. Ford Motor Co.*,
 97 S.W.3d 237 (Tex. App.—Houston [14th Dist.] 2002, no pet.)......................46

*Provident Life & Accident Ins. Co. v. Knott*,
 128 S.W.3d 211 (Tex. 2003)........................................................................17

*Randall's Food Markets v. Johnson*,
 891 S.W.2d 640 (Tex. 1995)........................................................................54

*Range v. U.S.*,
 256 B.R. 868 (S.D. Tex. 2000).....................................................................36

*Reed v. City of Arlington*,
 620 F.3d 477 (5th Cir. 2010)........................................................................32

*Reed v. City of Arlington*,
 650 F.3d 571 (2011)....................................................................................32

*Richey v. Brookshire Grocery Co.*,
 952 S.W.2d 515 (Tex. 1997)...................................................................48, 49

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*,
 81 F.3d 355 (3rd Cir. 1996) .........................................................................43

*Siller v. LPP Mortgage, LTD*,
 2013 Tex. App. LEXIS 4520 (Tex. App.—San Antonio Apr. 10, 2013,
 pet. for review denied) ................................................................. 18, 19, 21, 37

*Spera v. Fleming, Hovenkamp & Grayson, P.C.*,
 25 S.W.3d 863 (Tex. App.—Hou. [14th Dist.] 2000, no pet.) .........................39

*Stallings v. Hussman Corp.*,
447 F.3d 1041 (8th Cir. 2006)..................................................................43

*Stephenson v. Leboeuf*,
16 S.W.3d 829 (Tex. App.—Hou. [14th Dist.] 2000, pet. for review
denied and subsequent appeal, remanded on other grounds) ....................passim

*Thomas v. Ginter*,
2014 Tex. App. LEXIS 8183 (Tex. App.—Hou. [1st Dist.] July 29, 2014,
no pet.)....................................................................................................passim

*Torres v. GSC Enters., Inc.*,
242 S.W.3d 553 (Tex. Ct. App.---El Paso 2007, no pet.) ...............................52

*Tow v. Pagano*,
312 S.W.3d 751 (Tex. App.—Hou. [1st Dist.] 2009, no pet.)............... 19, 21, 37

*Travelers Ins. Co. v. Joachim*,
315 S.W.3d 860 (Tex. 2010).......................................................................17

*Trostle v. Combs*,
104 S.W.3d 206 (Tex. App.---Austin 2003, no pet.) .................................52, 53

*U.S. v. 162 Megamania Gambling Devices*,
231 F.3d 713 (10th Cir. 2000).....................................................................22

*Valence Operating Co. v. Dorsett*,
164 S.W.3d 656 (Tex. 2005).......................................................................17

*Vinson & Elkins v. Moran*,
946 S.W.2d 381 (Tex. App.—Hou. [14th Dist.] 1997, writ dism'd by agr.
and mot. dismissed) ...................................................................................39

*Vitale v. Keim*,
1997 Tex. App. LEXIS 4719 (Tex. App.—Hou. [1st Dist.] Aug. 29,
1997, review denied)..................................................................................39

*Wal-Mart Stores, Inc. v. Medina*,
814 S.W.2d 71 (Tex. Ct. App.---Corpus Christi 1991, writ denied and
reh'g of writ of error overruled)....................................................................46

*Western Invs., Inc. v. Urena*,
162 S.W.3d 547 (Tex. 2005).......................................................................17

*WFAA-TV, Inc. v. McLemore*,
    978 S.W.2d 568 (Tex. 1998) .............................................................53

**OTHER AUTHORITIES**

Eric Hilmo, *Bankrupt Estoppel: The Case for a Uniform Doctrine of
    Judicial Estoppel As Applied Against Former Bankruptcy Debtors*, 81
    Fordham L. Rev. 1353 (2012) ..........................................................30

Tex. R. App. P. 53.2(f) ......................................................................15

Tex. R. Civ. P. 166a(i) ......................................................................46

Tex. R. Civ. P. 166a(c) ................................................................passim

# IDENTITY OF PARTIES AND COUNSEL

The following constitutes a list of all parties and the names and addresses of all trial and appellate counsel:

| | |
|---|---|
| Appellant/Plaintiff: | Raymond Espinosa |
| Appellant's Trial Counsel: | Mark T. Murray<br>Stevenson & Murray<br>Texas State Bar No. 14724810<br>24 Greenway Plaza, Suite 750<br>Houston, Texas 77046<br>(713) 622-3223 [Telephone]<br>(713) 622-3224 [Facsimile] |
| Appellant's Appellate Counsel: | Robert Teir<br>Robert Teir, PLLC<br>845 FM 517 W, Suite 200<br>Dickinson, Texas 77539<br>(832) 365-1191 [Telephone]<br>(832) 550-2700 [Facsimile] |
| Appellees/Defendants: | Aaron's Rents, Inc., Aaron's, Inc., Aaron's Sales and Lease Ownership, and Nicole Lee |
| Appellees' Appellate Counsel: | Virginia Mixon Swindell<br>Texas State Bar No. 00794711<br>JACKSON LEWIS P.C.<br>1415 Louisiana, Suite 3325<br>Houston, TX 77002-7332<br>(713) 650-0404 [Telephone]<br>(713) 650-0405 [Facsimile] |

Dion Y. Kohler
Georgia Bar No. 427715
JACKSON LEWIS P.C.
1155 Peachtree Street, Suite 1000
Atlanta, Georgia  30309-3600
(404) 525-8200 [Telephone]
(404) 525-1173 [Facsimile]


Defendant/Third-Party Plaintiff :      J. Norris.[1]

---

[1]  Mr. Norris was dismissed from this case by Appellant/Plaintiff Raymond Espinosa at the trial court.

## STATEMENT OF THE CASE

Appellant/Plaintiff Raymond Espinosa ("Espinosa") brought suit against Appellees/Defendants Aaron's Rents, Inc., Aaron's, Inc., Aaron's Sales & Lease Ownership, and Nicole Lee (collectively, "Aaron's) on December 3, 2010, alleging claims for malicious prosecution, defamation, and intentional infliction of emotional distress based on allegedly false accusations of theft by Aaron's following the termination of Espinosa's employment. Espinosa also brought claims for fraud and breach of fiduciary duty in connection with Aaron's alleged failure to pay him a quarterly bonus. On October 20, 2010, just six weeks before bringing his claims against Aaron's, Espinosa filed for Chapter 7 bankruptcy. Espinosa was granted a "no asset" discharge and his bankruptcy case was closed on January 31, 2011. Espinosa never disclosed his claims against Aaron's to the bankruptcy court while his bankruptcy case was pending during the approximately two months after this lawsuit was initiated.

On December 13, 2013, Aaron's filed a Motion for Summary Judgment as to all of Espinosa's claims, on the grounds that Espinosa's claims were barred by the doctrine of judicial estoppel due to his failure to disclose them to the bankruptcy court. Aaron's also asserted other meritorious grounds for summary judgment with respect to the substantive elements of all of Espinosa's claims. On September 16, 2014, the court issued an Order granting summary judgment on all of

Espinosa's claims and awarding Aaron's its costs.  On October 14, 2014, Espinosa

filed a notice of appeal with this Court.

**STATEMENT REGARDING ORAL ARGUMENT**

This case does not present novel issues that require oral argument. The record before the trial court clearly shows that summary judgment was properly granted for Appellees.

# ISSUES PRESENTED

1.     Whether the trial court properly granted summary judgment to Aaron's based on judicial estoppel due to Espinosa's failure to disclose his claims during his bankruptcy proceedings.

2.     Whether the trial court properly granted summary judgment to Aaron's on Espinosa's malicious prosecution claim.

4.     Whether the trial court properly granted summary judgment to Aaron's on Espinosa's intentional infliction of emotional distress claim.

5.     Whether the trial court properly granted summary judgment to Aaron's on Espinosa's defamation claim.

## IV.    STATEMENT OF FACTS

### A.    FACTUAL BACKGROUND

#### 1.    Espinosa's Employment with Aaron's

Aaron's is a specialty retailer serving consumers through the sale and lease ownership of furniture, consumer electronics, computers, home appliances, and accessories in over 2,100 Company-operated and franchised stores in the United States and Canada. Espinosa was employed by Aaron's from February 6, 2002 until January 9, 2006.  (CRS 59, 65.)[2]  On October 21, 2002, Espinosa became the General Manager (GM) at store C0020 located in Monroe, Texas.  (CRS 21.)  He reported to Regional Manager (RM) Roger Hooker.  (*Id.*)  One of Espinosa's primary duties as GM was to protect company assets such as store inventory sold and leased to customers.  (CRS 66-67.)  On January 9, 2006, Espinosa's employment ended.  (CRS 59.)  Espinosa contends he resigned and Hooker claims Espinosa was terminated for performance reasons.  (CRS 60.)

#### 2.    Events Leading Up to Espinosa's Arrest and Prosecution

On February 11, 2006, Aaron's sent a truck to customer Jimmie Norris' residence to work with Norris to obtain payment or to collect rental furniture due to delinquent lease payments.  (CRS 95-100.)  The Aaron's drivers told Norris they understood he had rented a keyboard, 3 refrigerators, a washer/dryer, a big screen

---

[2] References to the Clerk's Record are identified as "CR."  References to the First Supplemental Clerk's Record are identified as "CRS."

1

TV and a Bose home theater system from Aaron's. (*Id.*) Norris told them he had never rented anything or signed a rental contract. (*Id.*)

Aaron's, through Vice-President Internal Security (Loss Prevention) Danny Walker, former Legal Counsel for Southwest Operations Nicole Lee, who is a named Defendant, and Hooker conducted an investigation of this incident. (CRS 185.) Ultimately, its investigation included: 1) interviewing Norris, Customer Service Representative (CSR) Tina Duhon, CSR Dawnisha Collier, Product Technician (PT) William Rogers, PT James Hebert, and Customer Accounts Manager (CAM) Joe Mermella; 2) conducting an audit of missing merchandise at the Monroe store; 3) reviewing documents related to lease agreements which appeared to be bogus; and 4) contacting customers who appeared to have bogus lease agreements. (CRS 188.)

On February 15, 2006, Norris provided a handwritten statement to Aaron's. (CRS 95-100.) According to the statement, Norris met Espinosa at a gym in 2002 and ran into him again in late 2003 or early 2004. Norris inquired about purchasing a big screen TV and Espinosa said the store did not have one to sell at the time but he would keep an eye out for one. (*Id.*) Norris later saw Espinosa at the gym and Espinosa told him he had a big screen TV coming in he could sell Norris for cash. (*Id.*) A couple of days later, Espinosa called Norris and said he had a 52" RCA TV he could sell him for $400 cash. (*Id.*) Norris agreed, but

2

Espinosa told him not to come by the store to pick it up, he would have it delivered instead. (*Id.*) Espinosa later called Norris and asked him if he was still interested in leather furniture, which Norris had seen at a tent sale. (*Id.*) Norris said he was interested and Espinosa agreed to sell Norris the furniture and TV for $1200 and have it delivered to him. (*Id.*) The next night, according to Norris, a large black male in an Aaron's truck delivered the TV and brown leather sofa, chair and ottoman; Norris gave him a check for $1200 payable to Aaron Rents. (*Id.*) Subsequently, Norris called Espinosa about buying a washer, dryer and side by side refrigerator. (*Id.*) Espinosa called Norris a couple of days later and said he had these items available for between $500-700 cash, which Norris said was acceptable depending on their quality. (*Id.*) On December 28, 2004, Espinosa delivered to Norris a Maytag refrigerator with no shelves and a GE washer/dryer with no hoses or cords. (*Id.*) Norris paid Espinosa $500 cash. (*Id.*)

On February 17, 2006, Duhon also provided a written statement to Aaron's. (CRS 102.) Duhon worked at the Monroe store under Espinosa as a CSR. (*Id.*) She stated that in mid-February, 2006, she discovered her brother had a big screen TV on his account she did not believe he had rented. (*Id.*) She contacted her brother who confirmed he did not rent the TV. (*Id.*) According to Duhon, she called Espinosa and they spoke on February 15, 2006. (*Id.*) Espinosa told Duhon he knew about the TV and would have the money dropped off to pay for it. (*Id.*)

3

Espinosa also asked Duhon about the whereabouts of customer Marese Butler's folder and she replied that she did not know. (*Id.*) Espinosa called Duhon back and said he had just gotten out of a meeting with Aaron's Vice President Dave Buck and he was not going to drop anything off until he met with Buck to discuss the "bogus deals" that had been written up. (*Id.*) According to Duhon, Espinosa also said "the guys would back up his story" rather than her. (*Id.*)

Duhon also told Aaron's in her statement she had created a lease folder for Norris and 3 other customers at the request of Espinosa, but he told her not to process them because they were "related to him and were good." (CRS 102.) Duhon also reported Espinosa dealt with certain customers and Espinosa took their lease payments directly. (*Id.*) Customers also told her they paid Espinosa directly and their accounts were paid. (*Id.*) Duhon reported other irregularities and stated she believed that Espinosa had merchandise which belonged to Aaron's. (*Id.*) The manner in which these transactions were handled by Espinosa as reported by Duhon were irregular and in violation of Aaron's policies and procedures.

Collier reported to Aaron's during her investigation interview that Espinosa called her after the investigation of Espinosa's practices began and said he was sending in a customer to get two big screen TV sets and two LCD monitors. (CRS 162.) According to Collier, Espinosa asked her to fill out an order form with false

4

information and schedule it for delivery. (*Id*.) Espinosa then asked Collier what she wanted out of the deal---money or product. (*Id*.)

The investigation also included an audit comparing the store's inventory versus merchandise which was recorded as on-lease or purchased since September 2005; this audit revealed approximately 30 items of merchandise which could not be accounted for. This included washers and dryers, large televisions, computers, Bose stereos and various items of furniture having a retail value in the amount of approximately $63,556.32. (CRS 111.) Customers whom Aaron's was able to contact denied renting the merchandise listed on their lease agreement(s) and much of the information on the lease agreements was false. (CRS 110-111, 194.) Also as part of the investigation, Hooker looked at the route sheets for the delivery drivers and the transactions which appeared to be phony were not listed. (CRS 193.) Further, GM Scott Newton reported to Hooker that Espinosa told him to "free time" Norris's delinquent lease accounts because he assisted him with collections.[3] (CRS 188.) In total, approximately 11 lease agreements were identified as fraudulent. (*See* CRS 95-100.)

On February 22, 2006, Lee and Walker contacted the Houston Police Department ("HPD"). Officer Hernandez was dispatched and prepared a police report which stated Espinosa appropriated property illegally over the last 1 ½ years

---

[3] When a lease is "free timed" the customer is not charged their normally due rental payment.

5

resulting in a total loss of $63,556.32. (CRS 104, 110-112.) Lee and Walker only reported information to Hernandez they believed to be true at the time. (CRS 186.) Officer Chapman was assigned by HPD to investigate the case. (CRS 104-105, 113-114.) Officer Chapman interviewed Lee and Walker and was told about the investigation Aaron's conducted and Aaron's provided a partial list of customer names used on fake rental agreements. (*Id.*) Officer Chapman personally attempted to contact the customers named on the rental agreements, but none of telephone numbers were valid. (*Id.*) Officer Chapman noted some of the agreements had the same address or included addresses for motels. (*Id.*) Officer Chapman told Assistant District Attorney Shipley that Aaron's records showed the merchandise for the bogus agreements amounted to approximately $31,000. (*Id.*) Officer Chapman was able to interview "customer" Leo Cardenas who stated he had borrowed the large TV listed in a bogus rental agreement to watch an election and then he purchased it. (CRS 105, 115.) Espinosa handled the transaction with Cardenas. (*Id.*) However, Aaron's had no record of the sale of this merchandise to Cardenas. (CRS 105.)

The Harris County District Attorney's office was also involved in the investigation. Norris was interviewed by Assistant District Attorney ("ADA") Layne Thompson, and stated he (Norris) purchased a refrigerator, washer and dryer from Espinosa for $500 cash. (CRS 105.) Again, Aaron's had no record of this

6

sale. (*Id*.) ADA Thompson reported Norris said that when he contacted Espinosa about the bogus lease agreements, Espinosa acted as if he knew about them and said he would contact Hooker and "straighten everything out." (CRS 105-106.)

ADA Thompson also interviewed Duhon and she confirmed that the signature on 2 pages of a bogus lease agreement was Espinosa's. (CRS 106, 180.) Duhon also confirmed the information in the statement she had given to Aaron's during their investigation. (CRS 106.) ADA Thompson also interviewed Collier, who confirmed her report to Aaron's that Espinosa asked her to facilitate a theft of merchandise by filing out an order form with false information and scheduling the products to be delivered. (CRS 107.) Collier told ADA Thompson that Espinosa said she could either get money or product out of the deal. (*Id.*)

ADA Thompson also interviewed Marese Butler, who denied ever leasing merchandise but had a false lease agreement showing she had leased merchandise which could not be located by Aaron's. (CRS 106.) Butler stated she went to Espinosa's store, looked at some merchandise and completed paperwork, but did not rent anything. (*Id.*) About a year later, Aaron's came to collect different merchandise they claimed she had rented. (*Id.*)

Based on the investigation conducted by his office, ADA Thompson concluded that Espinosa had stolen the merchandise from Aaron's, but ADA Thompson had concerns whether he could prove Espinosa's guilt beyond a

7

reasonable doubt to a jury. (CRS 107.) ADA Thompson was confident he could prove the transaction with Norris by Espinosa was theft but was concerned about not being able to conclusively prove Espinosa was responsible for the other transactions. (*Id.*) In addition, the value of the merchandise involved in the Norris transaction alone did not rise to the level of a felony. (*Id.*)

After the police and DA's office spent over 3 months investigating, a grand jury issued a felony theft indictment on May 31, 2006 (filed July 7, 2006) against Espinosa for appropriating 10 televisions, 4 refrigerators, 2 washers, 2 dryers and furniture with a value of approximately $20,100. (CRS 201-202.) The charges were filed by Officer Chapman after conducting his own investigation of the initial report made by Aaron's. Espinosa was arrested on a warrant obtained by Officer Chapman. (CRS 108.) The decision to file the charges and proceed with the prosecution was based upon the DA's investigation of the case. (*Id.*) No one at Aaron's pressured or attempted to influence the police or the DA's office to pursue the matter. (CRS 108, 186.) Importantly, Aaron's did not provide any false information to HPD or the DA's office during their investigation. (CRS 107.)

Ultimately, the grand jury issued a "no bill" to the charges. (CRS 107.) While ADA Thompson's office disagreed with the decision and was convinced of Espinosa's guilt, it was the policy of the District Attorney at the time not to pursue

8

prosecution when the grand jury issues a no bill. (*Id.*) On or about August 4, 2008, the charges against Espinosa were dismissed. (CRS 219-220.)

### 3.     Espinosa Files For Chapter 7 Bankruptcy

On October 20, 2010, Espinosa filed a petition for a Chapter 7 bankruptcy in the  United States Bankruptcy Court for the Southern District of Texas. (CRS 227-229.) Espinosa was represented by attorney Jared Brent Ynigez in his bankruptcy. (CRS 222.) In his Statement of Financial Affairs and Schedule B (in which he was required to list personal property), Espinosa did not list his claims against Aaron's. (CRS 30-31, 223, 235.)   Question 21 of Schedule B of Espinosa's bankruptcy petition asked him to list "[o]ther contingent and unliquidated claims of every nature."  (CRS 235.)  In response to Question 21, Espinosa checked "none."  (*Id.*) With respect to Schedule B, Espinosa signed a "Declaration Concerning Debtor's Schedules" indicating that "I declare under penalty of perjury that I have read the foregoing summary and schedules consisting of 17 sheets, and that they are true and correct to the best of my knowledge, information, and belief."  (CRS 247.)

On or about November 29, 2010, a creditors meeting was held and Espinosa also attended.  (CRS 224.)  On November 30, 2010, the trustee of Espinosa's bankruptcy estate, Rodney Tow, issued a "Report of No Distribution" indicating that there was no property available for distribution from the estate over and above

9

that exempted by law and that $267,745.48 in claims were scheduled to be discharged without payment. (CRS 224-225.)

On December 3, 2010, just 6 weeks after filing for bankruptcy, Espinosa filed his First Amended Original Petition against Aaron's. (CR 4-12.) Espinosa's bankruptcy petition remained pending for approximately two months after this lawsuit was initiated against Aaron's, but Espinosa never amended his listing of assets to include his claims against Aaron's. On January 31, 2011, Espinosa was granted a discharge and his bankruptcy case was closed. (CRS 225, 256-257.)

Aaron's filed its Motion for Summary Judgment on December 13, 2013, asserting that Espinosa's claims were barred due to, among other reasons, his failure to disclose his claims during his bankruptcy proceeding and because Espinosa lacked standing to bring his claims because they were property of the bankruptcy estate. (CRS 19-53.)

Trustee Rodney Tow subsequently filed a Motion to Reopen Espinosa's bankruptcy case, which the bankruptcy court granted on January 7, 2014. (CR 197.) On March 25, 2014, Mark Murray, Espinosa's trial counsel, was authorized by the trustee to act as special counsel for the bankruptcy estate in connection with Espinosa's case against Aaron's. (CR 195-197.) The trustee never intervened in Espinosa's case against Aaron's or moved to substitute himself as the real party in interest.

10

The trial court granted summary judgment to Aaron's on all of Espinosa's claims on September 14, 2014. (CR 312-313.) Subsequently, on February 4, 2015, Trustee Tow filed a "Report of No Distribution" stating that that there was no property available for distribution from the estate over and above that exempted by law and indicating that $167,270.00 in assets were abandoned and $267,745.48 were scheduled to be discharged without payment.[4] (Appendix, Bankruptcy Docket Sheet, Entry Dated February 4, 2015.) The bankruptcy court closed Espinosa's case for a second time on March 9, 2015. (Appendix, Doc. 45, Order Closing Case.)

## B. PROCEDURAL BACKGROUND

On October 26, 2010, Espinosa filed an Original Petition against Jimmie Norris in the District Court of Harris County, 129th Judicial District. (CRS 4-6.) On November 4, 2010, Norris filed an Agreed Motion for Leave to designate Appellees Aaron Rents, Inc., Aaron's, Inc., Aaron's Sales & Lease Ownership, and Nicole Lee as responsible third parties. (CR 30-33.) The Court issued an Order on November 11, 2010 granting Norris' motion. (CRS 9.) Espinosa moved to nonsuit

---

[4] Although these subsequent events in Espinosa's bankruptcy case are not part of the trial court's record, Aaron's believes this updated information will assist the Court in understanding the procedural posture of this case and in making a determination as to the issues raised in Espinosa's appeal, and asks the Court to take judicial notice of these documents. *See Freedom Communications, Inc. v. Coronado,* 372 S.W.3d 621, 623 (Tex. 2012) ("a court will take judicial notice of another court's records if a party provides proof of the records"); *Antonov v. Walters*, 168 S.W.3d 901, 903 n.1 (Tex. App.—Fort Worth 2005) (taking judicial notice of facts set forth in records from bankruptcy proceedings filed by appellees as an appendix).

Norris without prejudice and Norris was dismissed from the case on March 22, 2011. (CRS 11.) Espinosa used this legal maneuver because otherwise his claims against Aaron's and Lee would have been time-barred.

Espinosa's First Amended Original Petition was filed December 3, 2010, alleging claims for malicious prosecution, defamation, and intentional infliction of emotional distress in connection with allegedly false accusations of theft by Aaron's. (CR 4-12.) Espinosa also asserted claims for fraud and breach of fiduciary duty in connection with Aaron's alleged failure to pay him a quarterly bonus for the last quarter he worked. (*Id.*)

On December 13, 2013, Aaron's and Lee filed a Motion for Summary Judgment as to all of Espinosa's claims.[5] (CRS 19-53.) Aaron's Motion for Summary Judgment was based on the following grounds: (1) Espinosa's claims are barred under the doctrine of judicial estoppel due to his failure to disclose them during his bankruptcy proceedings; (2) Espinosa lacked standing to bring his claims because they are property of the bankruptcy estate; (3) Espinosa's malicious prosecution claim fails as a matter of law because, among other things, Aaron's did not knowingly provide false information to the authorities; (4) Espinosa's defamation claim fails as a matter of law because Espinosa had no admissible

---

[5] Aaron's also filed an earlier Motion for Summary Judgment on June 6, 2012 on the grounds that Espinosa's claims were barred by the applicable statutes of limitation. (CR 15-24.) The court denied this Motion for Summary Judgment on October 15, 2012. (CRS 16.)

12

evidence of a defamatory statement, there was no evidence Aaron's acted negligently, and the alleged statements were subject to a qualified privilege; (5) Espinosa's intentional infliction of emotion distress (IIED) claim fails as a matter of law because he could not establish the necessary elements of an IIED claim and Espinosa could not bring an IIED claim, which is a "gap-filler" tort, because it was based on the same alleged actions as his other tort claims; and (6) Espinosa failed to establish claims for fraud and breach of fiduciary duty. (*Id.*)

Espinosa filed a Response in Opposition to Aaron's Motion for Summary Judgment on September 8, 2014. (CR 170-183.) Aaron's filed a Reply in Support of its Motion for Summary Judgment on September 11, 2014. (CR 298-311.) The court held a hearing on September 14, 2014. On September 16, 2014, the court issued an Order granting summary judgment on all of Espinosa's claims and awarding Aaron's and Lee their costs. (CR 312.) On October 14, 2014, Espinosa filed a notice of appeal with this Court. (CR 320.)

## C.  SUMMARY OF THE ARGUMENT

This case raises two important public issues.  First, the Court should affirm the trial court's grant of summary judgment because Espinosa is judicially estopped from asserting his claims against Aaron's due to his failure to disclose his claims during the bankruptcy proceedings.  This doctrine is necessary to protect the integrity of the judicial system and was properly applied by the trial court. While Espinosa waived any argument regarding the application of Texas law versus federal law on judicial estoppel because he failed to raise that issue before the trial court, Texas courts look to federal law when applying judicial estoppel in the context of inconsistent statements made in a prior bankruptcy proceeding. Furthermore, judicial estoppel applies to Espinosa under both federal and Texas law.

In addition, the trial court's grant of summary judgment on Plaintiff's malicious prosecution claim was proper and consistent with the public policy of the state of Texas to encourage citizens to report suspected crimes to the authorities. Even assuming *arguendo* that judicial estoppel does not apply to bar Espinosa's claims, summary judgment was properly granted due to Espinosa's failure to raise a genuine dispute of material fact as to the essential substantive elements of his claims for malicious prosecution as well as his claims for

intentional infliction of emotional distress and defamation. Espinosa has failed to articulate any valid basis for reversing the trial court's grant of summary judgment with respect to the substantive elements of these claims.[6]

---

[6] Apart from his general challenge to the application of judicial estoppel, Espinosa has not raised any specific arguments challenging the trial court's grant of summary judgment on his claims for fraud and breach of fiduciary duty. Therefore, they are deemed abandoned. *See* Tex. R. App. P. 53.2(f).

## II.  ARGUMENT

## A. ESPINOSA IS ONCE AGAIN ATTEMPTING TO DECEIVE THE TRUSTEE AND HIS CREDITORS BY BRINGING THIS APPEAL.

After Aaron's raised its judicial estoppel defense on summary judgment, Espinosa disclosed his claims against Aaron's to the bankruptcy court and the trustee authorized Espinosa's trial counsel to act as special counsel for the bankruptcy estate in connection with Espinosa's case against Aaron's.  (CR 195-197.)  Following the trial court's grant of summary judgment to Aaron's on September 14, 2014, the trustee issued a report of no distribution, abandoned the remaining assets in Espinosa's bankruptcy case, and Espinosa's bankruptcy case was closed.  (Appendix, Bankruptcy Docket Sheet, Entry Dated February 4, 2015 and Doc. 45, Order Closing Case.)  Apparently, unbeknownst to the trustee and the bankruptcy court,[7] however, Espinosa has brought this appeal through a different attorney, Robert Teir, who was never authorized by the trustee to act on behalf of the bankruptcy estate.  It appears that Espinosa is now attempting to dupe the trustee and his creditors a second time by bringing this appeal without their knowledge or authorization.  Since the trustee has abandoned the assets in Espinosa's bankruptcy estate, any proceeds from Espinosa's claims against

---

[7] The record of Plaintiff's bankruptcy case does not indicate any filing providing notice to the bankruptcy court or his trustee of the filing of this appeal. (*See* Appendix, Bankruptcy Docket Sheet.)

16

Aaron's would go directly to Espinosa, and not to his creditors. For this reason alone, the Court should dismiss Espinosa's appeal.

## B. ESPINOSA'S CLAIMS AGAINST AARON'S ARE BARRED UNDER THE DOCTRINE OF JUDICIAL ESTOPPEL.

A trial court's grant of summary judgment is reviewed *de novo* on appeal. *Travelers Ins. Co. v. Joachim,* 315 S.W.3d 860, 862 (Tex. 2010); *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). Summary judgment should be affirmed if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Western Invs., Inc. v. Urena,* 162 S.W.3d 547, 550 (Tex. 2005). Because the trial court granted Aaron's motion for summary judgment without specifying the grounds relied on, summary judgment may be upheld on appeal if any of the grounds presented to the trial court is meritorious. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 216 (Tex. 2003).

To the extent the trial court granted summary judgment on the grounds that Espinosa's claims are barred by judicial estoppel due to his failure to disclose them during the bankruptcy proceedings, the trial court's grant of summary judgment was proper.

### 1. Any Reliance By the Trial Court on Federal Law Was Proper.

As an initial matter, Espinosa has waived any argument that reliance on federal law in applying judicial estoppel based on non-disclosure in a bankruptcy

17

proceeding was improper. He failed to raise this argument in response to Aaron's Motion for Summary Judgment, and did not cite any Texas law on judicial estoppel in his Response. (CR 173-174.) *See D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009) ("A non-movant must present its objections to a summary judgment motion expressly by written answer or other written response to the motion in the trial court or that objection is waived [on appeal]."); *Clear Lake Ctr., L.P. v. Garden Ridge, L.P.*, 416 S.W.3d 527, 542 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (In the summary judgment context, "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.") (quoting Tex. R. Civ. P. 166a(c)).

Regardless, any reliance by the trial court on federal law regarding judicial estoppel was entirely proper. Texas courts have consistently applied federal law when a party invokes judicial estoppel based on a prior bankruptcy proceeding. *See Thomas v. Ginter*, 2014 Tex. App. LEXIS 8183, at *6 (Tex. App.—Hou. [1st Dist.] July 29, 2014, no pet.) ("When a party invokes judicial estoppel in the context of a bankruptcy proceeding, we apply federal law to determine whether the doctrine applies."); *Siller v. LPP Mortgage, LTD*, 2013 Tex. App. LEXIS 4520, at *10 (Tex. App.—San Antonio Apr. 10, 2013, pet. for review denied) ("A majority of Texas courts do apply federal judicial estoppel law when the prior proceeding

18

was in bankruptcy court.") (citing cases); *Tow v. Pagano*, 312 S.W.3d 751, 756 (Tex. App.—Hou. [1st Dist.] 2009, no pet.) ("Because this issue arises in the bankruptcy context, we apply federal law to decide whether judicial estoppel bars Tow's claims."); *Cricket Commc'ns, Inc. v. Trillium Indus. Inc.*, 235 S.W.3d 298, 304 (Tex. App.—Dallas 2007, reh'g denied) (applying federal law where judicial estoppel was raised in the context of a prior bankruptcy proceeding involving a party's duty to disclose under the bankruptcy code); *Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 380-81 (Tex. App.—Hou. [1st Dist.] 2005, no pet.) (applying federal law); *Stephenson v. Leboeuf*, 16 S.W.3d 829, 841 (Tex. App.—Hou. [14th Dist.] 2000, pet. for review denied and subsequent appeal, remanded on other grounds) (same).

Since "the primary purpose of judicial estoppel is to preserve the integrity of the prior judicial proceeding . . . it makes sense to apply the law applicable to the prior proceeding." *Dallas Sales Co., Inc. v. Carlisle Silver Co., Inc.*, 134 S.W.3d 928, 931 (Tex. App.—Waco 2004, pet. for review denied);[8] *see also Siller*, 2013 Tex. App. LEXIS 4520, at \*10. This Court has also reasoned that application of federal law is appropriate to "promote the goal of uniformity and predictability in

---

[8] The court in *Dallas Sales* also reasoned that it was appropriate to apply federal law when judicial estoppel is invoked based on a prior bankruptcy proceeding by comparing it to the Texas Supreme Court's long-standing holding that federal law governs in determining the res judicata effect of a prior federal judgment on a state court claim. *See Dallas Sales Co, Inc.*, 134 S.W.2d at 931.

bankruptcy proceedings." *Jackson v. Hancock & Canada, L.L.P.*, 245 S.W.3d 51, 55 (Tex. App.—Amarillo 2007, pet. for review denied).

Espinosa miscites this Court's decision in *Ferguson v. Building Materials Corp. of Am.*, 276 S.W.3d 45 (Tex. App.—El Paso 2008, pet. for review granted, rev'd, remanded). It does not stand for the proposition that state law applies in this context. Rather, this Court stated in that case that the purpose of judicial estoppel "is to protect the integrity of the judicial process by preventing parties from playing 'fast and loose' with the courts for their own self interests . . . [t]hus, the doctrine is intended to protect the judicial system rather than litigants." *Id.* at 49 (citing *In re Coastal Plains*, 179 F.3d 197, 205 (5th Cir. 1999)).

The Texas Supreme Court's decision in *Ferguson v. Building Materials Corp. of Am.*, 295 S.W.3d 642 (Tex. 2009), did not alter the long-standing practice of Texas courts of applying federal law on judicial estoppel when the prior inconsistent statement was made in a bankruptcy proceeding. While the *Ferguson* decision did not cite to federal law regarding judicial estoppel, the Texas Supreme Court did not state that the Court of Appeals erred in any way in relying on federal judicial estoppel law in rendering its decision. *See id*. at 643-644. Rather, the Texas Supreme Court reversed the Court of Appeals' decision on its facts and held that judicial estoppel did not apply to bar the Fergusons' claim because they fully disclosed the pending lawsuit in one section of their bankruptcy filings and simply

omitted to list the lawsuit in another section, unlike Espinosa. *Id.* The Fergusons also participated in a creditors meeting at which they again disclosed the pending personal injury suit to the trustee and the trustee acknowledged the pending litigation in his report and notified the bankruptcy court and creditors. *Id.* at 643. In contrast, Espinosa never made any such disclosure while his bankruptcy case was pending. (*See* CRS 30-31, 223, 235.) In *Ferguson*, the Fergusons fully apprised the bankruptcy court of their claims and there were no inconsistent statements upon which to base an application of judicial estoppel. *Id.* at 643-644.

Furthermore, Texas courts have continued to apply federal law on judicial estoppel with respect to prior bankruptcy proceedings after the *Ferguson* decision.[9] *See Flores v. Deutsche Bank Nat'l Trust Co.*, 2014 Tex. App. LEXIS 9318, at *13 (Tex. App.—Fort Worth Aug. 21, 2014, no pet.); *Thomas*, 2014 Tex. App. LEXIS 8183, at *6; *Siller*, 2013 Tex. App. LEXIS 4520, at *10; *Tow*, 312 S.W.3d at 756.

Appellant also incorrectly argues that judicial estoppel is a common law doctrine and therefore, compels the application of state law. Although there "is no federal <u>general</u> common law," *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 83 (1994) (emphasis added), judicial estoppel is a doctrine based in common law that

---

[9] The other two Texas Supreme Court cases Espinosa cites did not involve judicial estoppel based on a prior bankruptcy proceeding. *See Pleasant Glade Assembly of God v. Schubert*, 246 S.W.3d 1 (Tex. 2008); *Long v. Knox*, 155 Tex. 581 (Tex. 1956). Aaron's is unaware of any Texas Supreme Court cases, other than *Ferguson*, addressing judicial estoppel in the context of bankruptcy proceedings.

has been developed by the federal courts. *See In re Coastal Plains*, 179 F.3d at 205. Texas courts relying on federal law and not state law when applying judicial estoppel have repeatedly noted that judicial estoppel is a common law doctrine. *Cricket Commc'ns, Inc.*, 235 S.W.3d at 304 (quoting *In re Coastal Plains*, 179 F.3d at 205); *Andrews v. Diamond, Rash, Leslie & Smith*, 959 S.W.2d 646, 649 (Tex. App.—El Paso 1997, writ denied) (citing federal law).

There is no support for Espinosa's assertion that federal law on judicial estoppel "would be far more difficult to follow." On the contrary, as evidenced by the cases cited *supra*, Texas courts have relied on federal law on judicial estoppel without any difficulty for years. While federal circuits may vary with respect to the application of judicial estoppel,[10] Texas courts have consistently looked to Fifth Circuit law on judicial estoppel in the bankruptcy context. *See Ferguson*, 276 S.W.3d at 49 ("Application of the doctrine is a matter of regional circuit law."); *Bailey v. Barnhart Interest, Inc.*, 287 S.W.3d 906, 910 (Tex. App.—Hou. [14th Dist.] 2009, no pet.) ("This court has applied Fifth Circuit law with regard to the elements of judicial estoppel and the proof required to establish the doctrine in the bankruptcy context.").

Texas courts have rejected Espinosa's contention that Texas law should

---

[10] As noted in *U.S. v. 162 Megamania Gambling Devices*, 231 F.3d 713, 726 (10th Cir. 2000), the Tenth Circuit's express rejection of the doctrine of judicial estoppel is a minority viewpoint on this issue.

apply with respect to judicial estoppel based on bankruptcy proceedings because the state courts are "trying to police their own processes."  Rather, in the bankruptcy context, Texas courts have indicated that "the primary purpose of judicial estoppel is to preserve the integrity of the prior judicial proceeding" and thus the law applicable to the prior proceeding – i.e. federal law – applies.  *Dallas Sales Co., Inc.*, 134 S.W.3d at 931; *see also Jackson*, 245 S.W.3d at 55 (use of federal law on judicial estoppel is appropriate to "promote the goal of uniformity and predictability in bankruptcy proceedings").[11]

### 2. Espinosa Is Judicially Estopped under Both the Texas and Federal Standards for Judicial Estoppel.

Even assuming the trial court should have applied Texas law on judicial estoppel, which Aaron's disputes for the reasons discussed above, Espinosa has not articulated any meaningful difference between Texas and federal law that would have compelled a different result in this case.  Aaron's was entitled to summary judgment under both the Texas and federal law on judicial estoppel.

### a. Judicial Estoppel Applies to Espinosa Under Federal Law.

Under federal law, judicial estoppel applies in the bankruptcy context if the following elements are met: (1) the party to be estopped has asserted a legal position that is clearly inconsistent with its prior position; (2) a court accepted the

---

[11] The Erie doctrine articulated by the U.S. Supreme Court in *Erie v. R.R. v. Thompkins*, 304 U.S. 64, 78 (1938), cited by Espinosa, applies in actions in federal court based on diversity jurisdiction, and is not applicable here.

prior position; and (3) the party to be estopped did not act inadvertently. *Cricket Commc'ns, Inc.*, 235 S.W.3d at 304 (citing *In re Coastal Plains*, 179 F.3d at 206-07). The undisputed evidence presented at summary judgment established these three elements; therefore, the Court's entry of summary judgment on Aaron's judicial estoppel defense was proper.

### i. Espinosa Asserted A Clearly Inconsistent Position.

The United States Bankruptcy Code and rules "impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims." *Cricket Commc'ns, Inc.*, 235 S.W.3d at 305 (citing *In re Coastal Plains*, 179 F.3d at 207-08). The debtor's duty to disclose potential claims "does not end when the debtor files schedules, but instead continues for the duration of the bankruptcy proceedings." *Id.* (citing *In re Coastal Plains*, 179 F.3d at 208). The undisputed evidence establishes that Espinosa failed to disclose his claims against Aaron's in his Statement of Financial Affairs or Schedule B (in which he was required to list personal property). (CRS 30-31, 235.) Accordingly, Aaron's established that Espinosa took a clearly inconsistent position in the bankruptcy proceeding. *See Garcia v. BNSF Railway Co.*, 387 S.W.3d 763, 767 (Tex. App.—El Paso 2012, no pet.) (holding that BNSF met its burden of establishing that Garcia took a clearly inconsistent position where "[t]he evidence conclusively establishes that Garcia did not disclose his personal injury suit against

24

BNSF in the Schedule of Personal Property or the Statement of Financial Affairs").

Espinosa argues that he did not take an inconsistent position because his failure to disclose his claims against Aaron's in his bankruptcy filings was an omission, rather than an affirmative statement, and because it was inadvertent. Contrary to Espinosa's argument, judicial estoppel in the bankruptcy context clearly covers omissions. *See Jackson*, 245 S.W.3d at 55 ("The omission of a known cause of action from the debtor's mandatory bankruptcy filings is tantamount to a representation that no such claim existed."); *In re Coastal Plains*, 179 F.3d at 210 (holding that the inconsistent positions prong was satisfied when the party to be estopped omitted the claims from its schedules and stipulations with the bankruptcy court). Furthermore, while inadvertence of the omission is considered under a separate prong, "the debtor's failure to disclose assets is inadvertent only when the debtor lacks knowledge of the undisclosed claim or has no motive for their concealment." *Jackson*, 245 S.W.2d at 57 (citing *In re Coastal Plains*, 179 F.3d at 208). Since Espinosa had knowledge of his claims and a motive to conceal his claims from creditors since the proceeds would not go to the creditors if they were concealed, but to him instead, his failure to disclose cannot be considered to be inadvertent. *See id.*

### ii. The bankruptcy court accepted Espinosa's prior position.

Espinosa does not appear to dispute that the bankruptcy court accepted his

25

prior position under the federal standard, nor could he under the undisputed facts of this case. Based on the trustee's determination that there were no assets available for distribution, the bankruptcy court granted Espinosa a discharge of $267,745.48 in creditor claims without payment and his bankruptcy case was closed. (CRS 224-225, 256.) Accordingly, it is clear that the bankruptcy court accepted Espinosa's prior position that he had no contingent or unliquidated claims. *See Brown*, 178 S.W.2d at 381 (holding that where the bankruptcy case was dismissed based on a finding that there are no assets available for distribution, the bankruptcy court accepted Brown's inconsistent position); *Stephenson*, 16 S.W.3d at 842 (rejecting argument that the party did not successfully maintain her inconsistent position in bankruptcy court where the party's debt "was discharged on the bankruptcy trustee's finding that she had no assets").

### iii. Espinosa Did Not Act Inadvertently.

As an initial matter, Espinosa never argued in response to Aaron's Motion for Summary Judgment that his omission was inadvertent, and thus he has waived this argument and it should not be considered by this Court. (CR 173-174.) *See* Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.") Now, after the fact and for the first time, Espinosa blames one of his prior attorneys, which of course, even if true, would not make the non-disclosure

26

inadvertent. *Brown*, 16 S.W.3d at 841-842 (holding that reliance on an attorney's advice does not bar application of judicial estoppel); *see also Garcia*, 387 S.W.3d at 768 (rejecting Garcia's argument that the disclosure was inadvertent because he informed his attorney about the personal injury suit and the attorney failed to include it in the bankruptcy documents).

As discussed, "[i]n considering judicial estoppel in the context of a prior bankruptcy case, the debtor's failure to disclose assets is inadvertent only when the debtor lacks knowledge of the undisclosed claim[s] or has no motive for their concealment." *Jackson*, 245 S.W.2d at 57 (citing *In re Coastal Plains*, 179 F.3d at 208). It is undisputed Espinosa had knowledge of the undisclosed claims because he initiated the present action only six weeks after filing for Chapter 7 bankruptcy protection. (CR 4-12, CRS 227-229.) Further in a conversation with Norris after his criminal proceeding ended but before Espinosa filed for bankruptcy, Espinosa told Norris "now it's my turn," a reference to his intent to pursue a claim against Aaron's. (CRS 61-62.)

Espinosa does not dispute that he had knowledge of his claims against Aaron's while his bankruptcy proceeding was pending, but alleges, citing to his Affidavit submitted in response to Aaron's Motion for Summary Judgment, that he discussed his potential claim against Aaron's with his bankruptcy attorney, but his attorney told him that he did not have a viable claim against Aaron's because the

27

statute of limitations had passed and it was not until later that he learned from his trial counsel that there was a way to pursue his claims against Aaron's. The first problem with this argument, however, is that this purported testimony by Espinosa was <u>never</u> included in any of the affidavits submitted to the trial court, and Espinosa never provided this explanation for his failure to disclose in his opposition to summary judgment.[12] (*See* CR 173-174, 184-188.)

Even if this purported testimony were submitted to the trial court, which it was not, Texas courts have rejected the argument that a non-disclosure was inadvertent based on reliance on advice from an attorney. *See Brown*, 16 S.W.3d at 841-842; *see also Garcia*, 387 S.W.3d at 768. Furthermore, even if Espinosa truly believed that his claims against Aaron's were worthless because they were barred by the statute of limitations, he still had an obligation to report it in his bankruptcy filings. *Brown*, 178 S.W.3d at 380 ("debtors in a bankruptcy action have an absolute duty to report whatever interests they hold in property, even if they believe the asset is worthless or unavailable to the bankruptcy estate"); *Stephenson*, 16 S.W.3d at 841; *see also Cricket Commcn's, Inc.*, 235 S.W.3d at 307 ("Any claim with potential must be disclosed, even if it is 'contingent,

---

[12] Espinosa's characterization of his alleged discussions with his bankruptcy attorney and trial attorney also misrepresents the relevant timeline. Espinosa filed his bankruptcy petition on October 20, 2010, filed his Original Petition against Norris on October 26, 2010, and filed the First Amended Original Petition against Aaron's on December 3, 2010, all within a span of approximately six weeks. (CR 4-6, CRS 4-6, 227-229.) Thus, his bankruptcy proceeding had not been "going on for some time" (as alleged by Espinosa) before his attorney found a way to pursue Aaron's.

28

dependent, or conditional.'") (citing *In re Coastal Plains*, 179 F.3d at 208); *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004) ("Alleged confusion as to a limitations period does not evince a lack of knowledge as to the existence of the claim.")

It cannot be seriously argued that Espinosa lacked a motive to conceal his claims against Aaron's from his creditors in the bankruptcy proceeding because any proceeds from the undisclosed claims would have gone to Espinosa rather than to his creditors. *See Cricket Commcn's, Inc.*, 235 S.W.3d at 307 ("If a debtor's undisclosed claim would have added assets to the bankruptcy estate . . . a debtor will usually be deemed to have a motive to conceal those claims."); *Jackson*, 245 S.W.3d at 57 (holding that "the Jacksons had a motive to conceal their claims . . . as their failure to disclose the claims would prevent any future recovery from inuring to the benefit of their creditors"); *In re Superior Crewboats, Inc.*, 374 F.3d at 336 (finding that the plaintiffs "had the requisite motivation to conceal the claim as they would certainly reap a windfall had they been able to recover on the undisclosed claim without having disclosed it to the creditors.").

The fact that the bankruptcy court was later apprised of Espinosa's claims against Aaron's <u>after</u> Aaron's moved for summary judgment on the issue of judicial estoppel does not cure his prior act of non-disclosure or alter the analysis for purposes of judicial estoppel. *See In re Superior Crewboats, Inc.*, 374 F.3d at

29

336 (applying judicial estoppel despite the fact that the debtors later reopened their bankruptcy case and disclosed their claims because "[j]udicial estoppel was designed to prevent such abuses"). Thus, even assuming Espinosa's creditors would stand to benefit from any proceeds resulting from his claims against Aaron's (which is not the case because the trustee formally abandoned Espinosa's assets and Espinosa is pursuing this appeal without the authorization or apparent knowledge of the bankruptcy trustee), any such benefit is inconsequential at this juncture.

### iv. Fifth Circuit Precedent Supports the Application of Judicial Estoppel.

Espinosa argues that this Court should look to other federal circuits in its application of judicial estoppel; however, it is clear that Texas courts should apply Fifth Circuit law when analyzing judicial estoppel in the bankruptcy context. *See Ferguson*, 276 S.W.3d at 49; *Bailey*, 287 S.W.3d at 910. Moreover, there is no support for Espinosa's assertion that Fifth Circuit law on judicial estoppel represents a minority viewpoint. Numerous other federal circuits apply judicial estoppel under a framework substantially similar to that articulated by the Fifth Circuit in *In re Superior Crewboats*.[13] *See* Eric Hilmo, *Bankrupt Estoppel: The*

---

[13] The Ninth Circuit in *Ah Quin v. County of Kauai DOT*, 733 F.3d 267 (9th Cir. 2013) discussed *In re Coastal Plains* in the context of the Fifth Circuit's narrow interpretation of the "inadvertence element," which it noted was similar to the approach used by the Sixth, Tenth, and Eleventh Circuits. The Seventh Circuit in *Biesek v. Soo Line Railroad Co.*, 440 F.3d 410 (7th Cir. 2006) did not specifically discuss *In re Coastal Plains*, and ultimately held that Biesek could

*Case for a Uniform Doctrine of Judicial Estoppel As Applied Against Former Bankruptcy Debtors*, 81 Fordham L. Rev. 1353 (2012) (noting that the standard articulated by the Fifth Circuit in *In re Coastal Plains* "has become the de facto standard for federal courts applying judicial estoppel to claims previously undisclosed in bankruptcy brought by former debtors" and citing cases).

The two cases cited by Appellant do not establish that *In re Coastal Plains* and *In re Superior Crewboats* are no longer good law in the Fifth Circuit. Both cases are easily distinguished. The Fifth Circuit in *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 386-388 (5th Cir. 2008), distinguished *In re Superior Crewboats and In re Coastal Plains* because in *Kane*, the bankruptcy trustee (rather than the debtors themselves) was pursuing the claim as the real party in interest and the Fifth Circuit reasoned it was inequitable to apply judicial estoppel against the trustee, who had not himself made any inconsistent statements. Since the trustee is not a party to the instant action and has abandoned Espinosa's claims against Aaron's, no such equitable considerations apply and the trial court properly applied judicial estoppel as to Espinosa.

---

not pursue his claim because it belonged to the bankruptcy estate. The Ninth Circuit in *Dunmore v. U.S.*, 358 F.3d 1107, 1113 n.3, commented only that Dunmore's omission of certain claims during his Chapter 7 bankruptcy "would ordinarily act as judicial estoppel against his asserting those very same claims against the Government," but that the district court judge had allowed him to remedy his inconsistent assertions by reopening his bankruptcy case which "was a permissible alternative to judicial estoppel."

Similarly, in *Reed v. City of Arlington*, 650 F.3d 571 (2011),[14] the Fifth Circuit held that while the debtor himself was properly estopped for his dishonesty, the judicial estoppel defense did not apply to the bankruptcy trustee who had substituted into the case as the real party in interest. In contrast, the trustee never substituted into this case and he has abandoned the claims against Aaron's, and thus judicial estoppel was properly applied as to Espinosa under the Fifth Circuit's reasoning in *Reed*.

### b. Judicial Estoppel Applies to Espinosa Under Texas Law.

Even if the Court applies Texas rather federal law as argued by Espinosa, his claims are nonetheless barred under the doctrine of judicial estoppel. The elements of judicial estoppel under Texas law are: (1) a sworn, inconsistent statement made in a prior judicial proceeding; (2) which was successfully maintained in the prior proceeding; (3) the absence of inadvertence, mistake, fraud, or duress in the making of the prior statement; and (4) the statement was deliberate, clear and unequivocal. *Ferguson*, 295 S.W.3d at 634; *Garcia*, 387 S.W.3d at 766 n.1; *Andrews*, 959 S.W. 2d at 650 n.2. The undisputed evidence before the trial court supports the application of judicial estoppel to Espinosa under Texas law.

---

[14] *Reed v. City of Arlington*, 620 F.3d 477 (5th Cir. 2010), cited by Espinosa, was subsequently vacated by the Fifth Circuit's opinion in *Reed v. City of Arlington*, 650 F.3d 571 (2011).

### i. Espinosa Made a Sworn, Inconsistent Statement in the Bankruptcy Proceeding.

This Court has noted that the most significant difference between Texas and federal law on judicial estoppel is that Texas courts require that the statement in the prior proceeding be a sworn statement. *See Andrews*, 959 S.W. 2d at 650 n.2. It is undisputed that the statements made by Espinosa in the bankruptcy proceeding were sworn statements made under penalty of perjury. (CRS 247.)

Espinosa's representation, made under oath, to the bankruptcy court that he had no contingent or unliquidated claims and his later assertion of his claims against Aaron's after filing for bankruptcy are clearly inconsistent. (CRS 30-31, 235.) Espinosa argues, citing the Texas Supreme Court's decision in *Ferguson*, that he did not make any statements that were inconsistent. However, *Ferguson* is plainly distinguishable. In *Ferguson*, the court found that the Fergusons had not taken a clearly inconsistent position because they disclosed the pending lawsuit, including the caption and style of the suit, nature of the claim, cause number, and the court in which it had been filed, to the bankruptcy court in the Statement of Financial Affairs. 295 S.W.3d at 643-644. The Fergusons also disclosed the lawsuit at a creditors meeting to the bankruptcy trustee. *Id.* Based on these facts, the court reasoned that judicial estoppel should not apply because they had clearly made the bankruptcy court aware of the lawsuit. *Id* at 643-644.

In contrast, Espinosa completely failed to put the bankruptcy court on notice

of his claims against Aaron's, despite having years to do so. Espinosa did not list the lawsuit in either his Statement of Financial Affairs or Schedule of Personal Property (Schedule B) and never informed the bankruptcy trustee about the lawsuit at the creditor's meeting at which he appeared. (CRS 30-31, 224, 235.) Based on Espinosa's representations, Espinosa was granted a "no asset" discharge and his bankruptcy case was closed. (CRS 224-225, 256.) Thus, *Ferguson* is inapplicable. *See Dallas Sales Co.*, 134 S.W.3d at 932 (holding that where the appellant did not list any of the claims asserted in the later lawsuit in his bankruptcy schedules, "[i]t's pursuit of these claims is clearly inconsistent with the position it took in bankruptcy court").

### ii. Espinosa Successfully Maintained His Position in the Prior Proceeding.

Espinosa successfully maintained his position in the bankruptcy proceeding because the bankruptcy trustee determined that Espinosa had no assets available for distribution, he was granted a discharge of $267,745.48 in creditor claims without payment, and his bankruptcy case was closed. (CRS 224-225, 256.) *See Ginter*, 2014 Tex. App. LEXIS 8183, at *6 ("Examples of a bankruptcy court 'accepting' a debtor's claims for judicial estoppel purposes include cases where the debtor receives a discharge based on information he gives about his bankruptcy estate, and where the court issues a 'no asset' discharge."); *Brown*, 178 S.W.2d at 381 (holding that Brown successfully maintained his prior position because the

34

bankruptcy case was dismissed based on a finding that there are no assets available for distribution); *Stephenson*, 16 S.W.3d at 842 (rejecting argument that the party did not successfully maintain her inconsistent position in bankruptcy court where the party's debt "was discharged on the bankruptcy trustee's finding that she had no assets").

Contrary to Espinosa's assertion, the court in *Ferguson* did not comment on the issue of whether the Fergusons successfully maintained their prior position, but rather held that judicial estoppel did not apply because they did not take a clearly inconsistent position and did not gain any unfair advantage in their bankruptcy proceeding because the bankruptcy court was fully apprised of their claims at the outset. *See* 295 S.W.2d at 634-644. While the court in *Ferguson* did state that "a party cannot be judicially estopped if it did not prevail in the prior action," this Court has held that for purposes of judicial estoppel, this does not mean that "the party against whom the judicial estoppel doctrine is to be invoked must have prevailed on the merits." *Norris v. Brookshire Grocery Co.*, 362 S.W.3d 226, 230 (Tex. App.—Dallas 2012, pet. for review denied). Rather, it is sufficient "that the first court has adopted the position urged by the party, either as a preliminary matter or as part of final disposition."[15] *Id.*

---

[15] Espinosa cites to several cases discussing the prevailing party for purposes of attorneys' fees awards which are inapplicable in the context of judicial estoppel based on bankruptcy proceedings. *See Arrow Marble, LLC v. Killion*, 441 S.W.3d 702 (Tex. App.—Hou. [1st Dist.]

35

### iii. Espinosa's Statements Were Not Inadvertent.

Espinosa waived any argument that the omission of his claims against Aaron's in the bankruptcy proceeding was inadvertent because he failed to raise this argument at the trial court.[16] *See* Tex. R. Civ. P. 166a(c). In any event, Espinosa's failure to disclose his claims against Aaron's to the bankruptcy court was not inadvertent. It is undisputed that Espinosa knew about his claims against Aaron's while his bankruptcy case was pending and did not disclose them to the bankruptcy court in any manner until after Aaron's raised the issue on summary judgment. Further, as discussed above, Espinosa's explanation that he did not disclose his claims against Aaron's to the bankruptcy court because he believed that the statute of limitations had passed is not included in any of the affidavits submitted to the trial court and is nowhere in the record. (*See* CR 173-174, 184-188.) Accordingly, Espinosa's purported testimony (which is nowhere to be found in the record) cannot be considered as grounds for reversal. Regardless, as discussed above, reliance on his attorney's alleged "advice" does not make the non-disclosure inadvertent.

Again, the Texas Supreme Court's decision in *Ferguson* is factually

---

2014, no pet.); *Bhatia v. Woodlands North Houston Heart Center, PLLC*, 396 S.W.3d 658 (Tex. App.—Hou. [14th Dist.] 2013, pet. for review denied); *Range v. U.S.*, 256 B.R. 868 (S.D. Tex. 2000).

[16] Espinosa also did not argue at the trial court (and does not argue in this appeal) that his misrepresentations to the bankruptcy court were due to mistake, fraud, or duress. *See Garcia*, 387 S.W.3d at 766 n.1.

distinguishable from this case because the Fergusons clearly intended to and did disclose their claims to the bankruptcy court in their bankruptcy filings and at the creditor's meeting, but omitted to list the claims in one portion of the bankruptcy filings. 295 S.W.2d at 643. Thus, there was no non-disclosure in that case. As discussed, Espinosa never disclosed his claims against Aaron's anywhere in his bankruptcy filings or otherwise made the bankruptcy court aware of his claims while his case was pending. Thus, the trial court's decision to apply judicial estoppel in this case is entirely consistent with *Ferguson*.

Furthermore, the *Ferguson* decision did not reject the notion of applying judicial estoppel based on failure to disclose claims in bankruptcy filings, as suggested by Espinosa. Rather, the court in *Ferguson* held that judicial estoppel did not apply because the Fergusons did not take an inconsistent position in that they did disclose their claims to the bankruptcy court. *See* 295 S.W.3d at 643-633. Since *Ferguson*, this Court has continued to apply judicial estoppel in the context of bankruptcy proceedings. *See Flores*, 2014 Tex. App. LEXIS 9318, at *13; *Thomas*, 2014 Tex. App. LEXIS 8183, at *6; *Siller*, 2013 Tex. App. LEXIS 4520, at *10; *Tow*, 312 S.W.3d at 756.

Application of judicial estoppel in this case likewise does not conflict with the Texas Supreme Court's decision in *Long v. Knox*, 155 Tex. 581 (Tex. 1956). Knox convinced his creditors in a prior proceeding that he owned no interest in

37

certain properties and asserted in a subsequent proceeding that he owned a one-half interest in those properties. *Id.* at 584-585. Similarly, Espinosa represented to the bankruptcy court that he had no contingent or unliquidated claims and then subsequently brought claims against Aaron's.[17] Thus, the trial court's decision is consistent with *Long*.

### iv. Espinosa's statements to the bankruptcy court were deliberate, clear, and unequivocal.

Espinosa characterization of his statements to the bankruptcy court as "omissions" rather than deliberate, clear, and unequivocal statements is highly inaccurate. Question 21 of Schedule B of Espinosa's bankruptcy petition asked him to list "[o]ther contingent and unliquidated claims of every nature." (CRS 235.) In response to Question 21, Espinosa checked "none." (*Id.*) With respect to Schedule B, Espinosa signed a "Declaration Concerning Debtor's Schedules" indicating that "I declare under penalty of perjury that I have read the foregoing summary and schedules consisting of 17 sheets, and that they are true and correct to the best of my knowledge, information, and belief." (CRS 247.) Thus, Espinosa deliberately, clearly, and unequivocally represented to the bankruptcy court that he had no contingent or unliquidated claims of any nature and that the information in

---

[17] As discussed above, Espinosa's creditors do not stand to benefit from his claims against Aaron's because the trustee did not intervene in the case and subsequently abandoned Espinosa's claims against Aaron's. Espinosa has brought this appeal without the apparent knowledge or authorization of the trustee.

his schedules was true and correct, with the knowledge that he had potential claims against Aaron's.

Even assuming *arguendo* that Espinosa's representation to the bankruptcy court is characterized as an omission rather than a statement, Texas courts make no distinction between the two. *See Cricket Commcn's, Inc.*, 235 S.W.3d at 306 (holding that appellees conclusively established that Cricket failed to disclose his claim to the bankruptcy court, "which is the equivalent of an affirmative representation that no such claim existed"). None of the cases cited by Espinosa stand for the proposition that judicial estoppel cannot be applied to a purported omission (nor do any of the cases cited discuss judicial estoppel in the context of a bankruptcy proceeding). *See, e.g., Galley v. Apollo Associated Servs., Ltd.*, 177 S.W.3d 523, 529 (Tex. App.—Hou. [1st Dist.] 2005, no pet.) (judicial estoppel did not apply because the contrary position was asserted in the same proceeding); *Spera v. Fleming, Hovenkamp & Grayson, P.C.*, 25 S.W.3d 863, 871-872 (Tex. App.—Hou. [14th Dist.] 2000, no pet.) (judicial estoppel not applied because statement was not sworn); *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 396-397 (Tex. App.—Hou. [14th Dist.] 1997, writ dism'd by agr. and mot. dismissed) (judicial estoppel not applied because statement not made under oath, statement was not unequivocal, and statement was made by attorney as an alternative argument in response to the possibility that assignments were valid); *Vitale v.*

*Keim*, 1997 Tex. App. LEXIS 4719, at \*31-35 (Tex. App.—Hou. [1st Dist.] Aug. 29, 1997, review denied) (judicial estoppel not appropriate because none of the statements were clearly inconsistent); *Balaban v. Balaban*, 712 S.W.2d 775, 778-779 (Tex. App.—Hou. [1st Dist.] 1986, writ ref'd n.r.e) (judicial estoppel not applied because statements not made under oath).

The decision in *Bunnell v. Lewis*, 1993 WL 290781 (Tex. App.—Hou. [14th Dist.] July 27, 1993), cited by Espinosa, is also distinguishable. In *Bunnell*, this Court held that Bunnell's failure to disclose a partnership agreement in his bankruptcy proceedings was not deliberate, clear, and unequivocal in light of the absence of controlling authority on whether the agreement should have been disclosed. *Id.* at \*4.

In the instant case, Espinosa does not dispute that his claims against Aaron's should have been disclosed to the bankruptcy court. Furthermore, Espinosa cannot rely on his alleged belief that his claims against Aaron's did not need to be disclosed to the bankruptcy court because they were barred by the statute of limitations, since there was no evidence or argument to that effect in the record before the trial court and because this alleged explanation would not bar the application of judicial estoppel in any event.

> **v.** **Espinosa gained an unfair advantage by failing to disclose his claims against Aaron's.**

Espinosa gained an unfair advantage because his creditors were prevented

40

from attempting to collect on their debts before his bankruptcy case was closed. *See Jackson*, 245 S.W.3d at 51 (holding that "the Jacksons derived an unfair advantage by their failure to disclose their claims against H&C because, while the bankruptcy was pending, the Jacksons' creditors were prevented from attempting to collect on their debts"); *Brown*, 178 S.W.3d at 381 (holding that "Brown benefitted, at least temporarily, by filing the inconsistent bankruptcy petition" because "while the bankruptcy was pending, Brown's creditors were prevented from attempting to collect on their debts").

Espinosa asserts that judicial estoppel should not apply because neither the creditors nor Aaron's were harmed or prejudiced by his failure to disclose his claims to the bankruptcy court. However, prejudice to the parties is not a necessary element with respect to application of judicial estoppel. *See Thomas*, 2014 Tex. App. LEXIS 8183, at *7 ("Because the doctrine of judicial estoppel is intended to protect the judicial system, rather than the litigants, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary."). The fact that Espinosa later disclosed his claims against Aaron's to the bankruptcy court (after Aaron's filed its Motion for Summary Judgment arguing judicial estoppel) likewise does not bar the application of judicial estoppel. *See Cricket Commcn's, Inc.*, 235 S.W.3d at 309 (rejecting argument that judicial estoppel should not apply because the non-disclosure was later corrected where the

41

correction occurred almost two months after the reorganization plan was confirmed by the bankruptcy court.)

Again, *Ferguson* is distinguishable because the Fergusons' claims were disclosed to the bankruptcy court in their initial bankruptcy filings. *See 295 S.W.3d at 643-644.* Moreover, there is no evidence that the trustee, creditors, and bankruptcy court were "indifferent" to Espinosa's disclosure of his claims against Aaron's. The bankruptcy case was reopened and the trustee expressed his intent to continue to pursue Espinosa's claims against Aaron's after Espinosa disclosed his claims. (CR 195-196, 199.) In fact, the trustee participated in mediation held by the parties. It was not until after the trial court granted summary judgment that the reopened bankruptcy case was closed based on a finding that there were no assets available for distribution. Presumably, this occurred because Espinosa's claims were dismissed by the trial court, however, it now appears that Espinosa has duped the trustee and the creditors once again by pursuing this appeal (apparently without the trustee's knowledge) and for his own benefit.

Espinosa also argues that summary judgment was inappropriate because there was no evidence of a motive to deceive the bankruptcy court. Motive or intent to deceive is not a necessary element for the application of judicial estoppel

under Texas law.[18]  *See Ferguson*, 295 S.W.3d at 634; *Garcia*, 387 S.W.3d at 766 n.1.  Furthermore, the undisputed facts show that Espinosa had a motive to conceal his claims against Aaron's from the bankruptcy court because any proceeds from the undisclosed claims would have gone to Espinosa rather than to his creditors.  *See Cricket Commcn's, Inc.*, 235 S.W.3d at 307 ("If a debtor's undisclosed claim would have added assets to the bankruptcy estate . . . a debtor will usually be deemed to have a motive to conceal those claims.")  Espinosa relies on his purported testimony about his belief that his claims were barred by the statute of limitations as alleged evidence precluding a grant of summary judgment; however as discussed, no such testimony was ever submitted to the trial court on summary judgment.  It was entirely appropriate for the trial court to grant summary judgment based on the undisputed facts in the record.  *See Dallas Sales Co.*, 134 S.W.3d at 932 (upholding grant of summary judgment based on judicial estoppel); *Jackson*, 245 S.W.3d at 55 (affirming trial court's grant of summary judgment on judicial estoppel defense).

---

[18] *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355 (3rd Cir. 1996) and *Stallings v. Hussman Corp.*, 447 F.3d 1041 (8th Cir. 2006), cited by Espinosa, are not in accord with Texas or Fifth Circuit law on judicial estoppel and are factually distinguishable.  In *Ryan Operations G.P.*, the Third Circuit held that the debtor's actions did not support a finding of a deliberate motive to conceal his claims because the bankruptcy court had specifically authorized the debtor to pursue certain types of claims and the debtor submitted evidence to the bankruptcy court in the form of fee requests showing that he was pursuing those claims.  81 F.3d at 364.  In *Stallings*, the Eighth Circuit held that judicial estoppel did not apply because the bankruptcy court never discharged Stallings' debts based on the information he provided in his bankruptcy schedules and there was no evidence that Stallings clearly knew he had a viable claim at the time his bankruptcy was pending.  447 F.3d at 1049.

### 3. No Alleged Equitable Considerations Weigh against Application of Judicial Estoppel.

None of the alleged equitable considerations advanced by Espinosa prevent the application of judicial estoppel. Espinosa's disclosure of his claims against Aaron's to the bankruptcy court after Aaron's moved for summary judgment is not an appropriate basis to deny application of judicial estoppel because "[j]udicial estoppel was designed to prevent such abuses." *See In re Superior Crewboats, Inc.*, 374 F.3d at 336; *see also In re Coastal Plains*, 179 F.3d at 205 (the purpose of judicial estoppel is to "protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest" and pleading "inconsistent positions").

There was no evidence that the trustee or creditors lacked interest in Espinosa's claims against Aaron's while they were pending at the trial court – on the contrary, the bankruptcy trustee expressed his intent to continue to pursue Espinosa's claims against Aaron's and authorized Espinosa's trial counsel, Mark Murray, to act as special counsel for the bankruptcy estate in connection with Espinosa's case against Aaron's. (CR 195-196, 199.) Moreover, Espinosa's creditors do not stand to benefit from his claims against Aaron's at this juncture because the trustee abandoned Espinosa's claims after the trial court granted summary judgment and Espinosa is pursuing this appeal for his own benefit. *See Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 386-387 (5th Cir. 2008)

(distinguishing that case, where the trustee was pursuing the claims on behalf of the Kane's creditors, from *In re Superior Crewboats* where the trustee had formally abandoned the debtor's claims and the interest had reverted to the debtors).

Moreover, even assuming that Espinosa's creditors could potentially benefit if his claims against Aaron's were allowed to move forward, this is not a relevant equitable consideration with respect to judicial estoppel according to this Court. *See Cricket Commcn's, Inc.*, 235 S.W.3d at 309 (rejecting Cricket's argument that applying judicial estoppel would be inequitable because it would prejudice his creditors). Likewise, the fact that Espinosa's omission of his claims against Aaron's before the bankruptcy did not affect Aaron's is irrelevant. *See id.* ("the law of judicial estoppel in a bankruptcy context is to protect the integrity of courts, not to punish adversaries or protect litigants") (citing *In re Coastal Plains*, 179 F.3d at 213); *see also Long*, 155 Tex. at 585 (judicial estoppel "is to be distinguished from equitable estoppel . . . because the elements of reliance and injury essential to equitable estoppel need not be present").

## C. ESPINOSA'S MALICIOUS PROSECUTION CLAIM FAILS AS A MATTER OF LAW.

None of the issues raised by Espinosa on appeal warrant reversal of a grant of summary judgment on the substantive elements of his malicious prosecution claim. Aaron's is entitled to summary judgment if it establishes that there is no

45

evidence of one or more of the elements of a pleaded claim. *See* Tex. R. Civ. P. 166a(i). Once Aaron's identifies elements for which there is no evidence, the non-movant (Espinosa) bears the burden of proof to raise a genuine issue of material fact as to each challenged element. *See id.*; *see also Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Praytor v. Ford Motor Co.*, 97 S.W.3d 237, 241 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Espinosa's evidence must be sufficient to allow reasonable and fair-minded people to differ in their conclusions on whether the challenged fact exists; evidence that raises only a speculation or surmise is insufficient. *See Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003).

To establish a claim for malicious prosecution, the plaintiff must show: (1) a criminal prosecution was commenced against him; (2) the defendant initiated or procured that prosecution; (3) the prosecution terminated in the plaintiff's favor; (4) the plaintiff was innocent of the charges; (5) the defendant lacked probable cause to initiate the prosecution; (6) the defendant acted with malice; and (7) the plaintiff suffered damages. *Kroger Tex. L.P. v. Suberu*, 216 S.W.3d 788, 793 n.3 (Tex. 2006). Actions for malicious prosecution are not traditionally favored in Texas based on the public policy interest favoring the exposure of crime. *Wal-Mart Stores, Inc. v. Medina*, 814 S.W.2d 71, 73 (Tex. Ct. App.---Corpus Christi 1991, writ denied and reh'g of writ of error overruled). Furthermore, and most

46

significantly, when the decision to prosecute is based upon an independent investigation by the authorities, the plaintiff must show that defendant *intentionally provided false information and the decision to prosecute would not have been made absent such false representation.* *Davis v. Prosperity Bank*, 383 S.W.3d 795, 803 (Tex. Ct. App.—Hou. [14th Dist.] 2012, no pet.) [Emphasis added.]

### 1. Aaron's Did Not Act With Malice.

Espinosa failed to raise a genuine issue of material fact as to the element of malice. In response to Aaron's Motion for Summary Judgment, Espinosa contended he threatened to report Aaron's to the Texas Workforce Commission ("TWC") for not paying him his bonus and speculated that these threats were the reason Aaron's went to the police. (*See* CR 187-188.) Even assuming Espinosa's allegation that he made these threats as true for purposes of the Motion for Summary Judgment, there is an insufficient nexus between any dispute over his bonus and reporting Espinosa to the police. According to Espinosa's Wage Claim filed with the TWC, Espinosa stated he was told he would not receive his bonus because of too many non-paying accounts at his store, which is not even related to the theft of merchandise. (CR 189-191.) Further, Espinosa acknowledged in his Wage Claim that his claim had been partially paid by Aaron's. (*Id*.) Further, when the information known to Aaron's about Espinosa's potential involvement in theft is considered, it is clear no reasonable jury could find this minor disagreement over

47

a bonus rather than the theft issue was the reason Aaron's went to the police. (*See* CRS 40-44.) Espinosa's speculation was insufficient to raise a genuine issue of material fact on the issue of malice. *See Backman v. J.C. Penney Co.*, No. 14-03-00436-CV, 2004 Tex. App. LEXIS 9003, at *9 (Tex. Ct. App.---Hou. [14th Dist.] 2004, no pet.) (holding that summary judgment was properly granted because the plaintiff failed to raise a genuine issue of fact on the element of malice).

### 2. Espinosa Failed to Rebut the Presumption that Aaron's Had Probable Cause to Make a Report to the Police.

Espinosa failed to present evidence to raise a genuine issue of material fact as to probable cause. The probable cause element "asks whether a reasonable person would believe that a crime had been committed given the facts as the complainant honestly and reasonably believed them to be before the criminal proceedings were instituted." *Kroger Tex. L.P.*, 216 S.W.3d at 792-93 (quoting *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997)); *Akin v. Dahl*, 661 S.W.2d 917, 921 (Tex. 1983). There is a presumption that the defendant acted reasonably and had probable cause to initiate criminal proceedings. *Kroger Tex. L.P.*, 216 S.W.2d at 793. The plaintiff can rebut this presumption only by producing evidence that "the motives, grounds, beliefs, or other information upon which the defendant acted did not constitute probable cause." *Id.* If the plaintiff produces such evidence, then the defendant has the burden to offer proof of probable cause. *Richey*, 952 S.W.2d at 518. When the facts underlying the

plaintiff's arrest and prosecution are undisputed, the question of probable cause is a question of law to be decided by the court. *Id*.

Espinosa contended in response to Aaron's Motion for Summary Judgment that Aaron's lacked probable cause to go to the police because it conducted what Espinosa describes as a "minimal investigation" and did not interview Espinosa. Aaron's engaged in a significant amount of investigative activities before calling the police. (*See* CRS 25-26.) Regardless, any failure on the part of Aaron's to conduct a more complete internal investigation prior to contacting the police does not demonstrate a lack of probable cause. *See Kroger Tex. L.P.*, 216 S.W.3d at 794 (holding that the fact that no one investigated the plaintiff's explanation before initiating criminal proceedings against the plaintiff is not evidence of a lack of probable cause). The Texas Supreme Court has stated "[i]t is well settled that a private citizen has no duty to investigate a suspect's alibi or explanation before reporting a crime." *Id*.

In sum, the undisputed facts established Aaron's had a reasonable belief Espinosa had stolen merchandise at the time it reported the incident to the police and summary judgment was appropriate on the element of probable cause. *See Arrendondo v. Rodriguez*, No. 14-09-00857-CV, 2011 Tex. App. LEXIS 584, at *20-22 (Tex. Ct. App.---Hou. [14th Dist.] 2011, no pet.) (affirming grant of

49

summary judgment because "the undisputed evidence conclusively shows that appellees had probable cause to initiate or procure the prosecution" of plaintiff).

### 3. Aaron's Did Not Initiate or Procure the Prosecution of Espinosa.

Espinosa failed to raise a genuine issue of material fact showing that Aaron's initiated or procured the prosecution against him. A defendant "initiates" a criminal prosecution by making a "formal charge" to law enforcement authorities. *Lewis v. Continental Airlines*, 80 F. Supp. 2d 686, 699 (S.D. Tex. 1999) (quoting *Browning-Ferris Indus. v. Lieck*, 881 S.W.2d 288, 292 (Tex. 1994)). Where the decision to prosecute is left to another individual, to establish the defendant "procured" the prosecution, the plaintiff must show that the defendant knowingly provided false information and that the decision to prosecute would not have been made but for the false information. *Davis*, 383 S.W.3d at 803 (emphasis added).

Espinosa does not contend on appeal that Aaron's knowingly provided false information to the authorities, but rather asserts that Aaron's initiated the chain of events that resulted in Espinosa's prosecution by reporting their suspicions to the police. This is insufficient to raise a genuine issue of material fact as to whether Aaron's initiated or procured the prosecution. It is undisputed that Aaron's did not file formal charges against Espinosa and that the decision to prosecute Espinosa was made by the police and District Attorneys' office. Over a period of months,

50

the police and DA conducted an independent investigation which involved interviewing numerous witnesses and examining voluminous documents relating to the allegations. Therefore, as a matter of law, naming Espinosa as a suspect to the police cannot be what initiated or procured the charges against him.[19] *See Lewis v. Continental Airlines*, 80 F. Supp. 2d 686, 699 (S.D. Tex. 1999); *Davis*, 383 S.W.3d at 80.

## D. ESPINOSA'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM FAILS AS A MATTER OF LAW.

Espinosa does not dispute that intentional infliction of emotional distress (IIED) is a "gap-filler" tort and is duplicative of his malicious prosecution claim, but argues that if the grant of summary judgment on his malicious prosecution claim is upheld, this would create a gap to allow him to assert an IIED claim. As an initial matter, Espinosa waived this argument because he did not assert it in response to Aaron's Motion for Summary Judgment. (*See* CR 180-181.) Tex. R. Civ. P. 166a(c). Moreover, this argument is illogical and contrary to Texas law.

---

[19] Espinosa argues, relying on *Bennett v. Grant*, 2014 Tex. App. LEXIS 8849 (Tex. App.—Austin Aug. 13, 2014) and *First Valley Bank of Los Fresnos v. Martin*, 55 S.W.3d 172 (Tex. App.—Corpus Christi 2001), that it is sufficient to show that the defendant's conduct is "the determining factor in the prosecutor's decision to prosecute" without showing that the defendant knowingly provided false information to the authorities. The Texas Supreme Court, however, reversed the Court of Appeals' decision in *First Valley Bank of Los Fresnos*. In so doing, the Texas Supreme Court noted that "[w]e have expressly held that fair disclosure is relevant to malice and causation, 'but has no bearing on probable cause.' Once a citizen has probable cause to report a crime, there can be no malicious prosecution, even if the subsequent report fails to fully disclose all relevant facts." *First Valley Bank v. Martin*, 144 S.W.3d 466, 470 (Tex. 2004). Thus, Espinosa would have to show that Aaron's affirmatively and knowingly made false statements to the authorities, which he cannot do.

51

The Texas Supreme Court has held that where the gravamen of a plaintiff's complaint is another claim (in this case, malicious prosecution), plaintiff cannot maintain an IIED claim regardless of whether he succeeds on, or even asserts that claim. *Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 448 (Tex. 2004). Thus, Espinosa is not entitled to assert an IIED claim even if he does not ultimately succeed on his malicious prosecution claim.[20]

## E. ESPINOSA'S DEFAMATION CLAIM FAILS AS A MATTER OF LAW.

Espinosa argues that any grant of summary judgment on the substantive merits of his defamation claim was in error because the alleged defamatory statements were not hearsay since he claims they were not offered for the truth of the matter asserted. The Court should reject this argument. The only evidence submitted by Espinosa in support of his defamation claim – his own testimony about what others allegedly heard and reported to him – is not admissible summary judgment evidence. *See Trostle v. Combs*, 104 S.W.3d 206, 213-214 (Tex. App.---Austin 2003, no pet.) (holding affidavit stating that "Mr. Shields told me that he had a telephone conversation with Susan Combs and had been told that [Plaintiffs]

---

[20] In addition, "[t]here is no liability for intentional infliction of emotional distress when an actor does no more than insist on his legal rights." *Torres v. GSC Enters., Inc.*, 242 S.W.3d 553, 563 (Tex. Ct. App.---El Paso 2007, no pet.) (affirming grant of summary judgment on IIED claim where the evidence established the defendants merely asserted their legal right when they reported to law enforcement authority that they believed a crime had been committed). Reporting a suspected crime to the police absent showing that false information was intentionally provided for the purpose of harming plaintiff is not the type of outrageous conduct reserved for a claim of IIED.

committed a crime" was hearsay and not competent evidence to support defamation claim on summary judgment); *Davis v. Household International, Inc.*, No. 05-90-01553-CV, 1991 Tex. App. LEXIS 3301, at \*5-7 (Tex. App.---Dallas 1991, no writ) (holding that plaintiff's testimony that another individual told the plaintiff what a third person had said about plaintiff was inadmissible hearsay that could not support defamation claim on summary judgment).[21]

Furthermore, as discussed in Aaron's summary judgment brief, even if these statements were not hearsay, the facts known to Aaron's at the time establish Aaron's acted without negligence, which defeats Espinosa's defamation claim. (*See* CRS 40-44.) *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998) (to establish a defamation claim, the plaintiff must show, among other things, that "the defendant acted with negligence regarding the truth of the statement").

Espinosa also argues that Aaron's alleged statements to its employees during its internal investigation were not subject to a qualified privilege. Espinosa waived this argument since he did not assert it in his Response to Aaron's Motion for Summary Judgment. (*See* CR 180-181.) Tex. R. Civ. P. 166a(c). Furthermore, since these statements were made during the course of an internal investigation to individuals who had a direct interest in the investigation as possible witnesses,

---

[21] Although Espinosa apparently could not find any Texas appellate decision upholding or rejecting a grant of summary judgment on the basis of hearsay, both *Trostle* and *Davis* upheld the grant of summary judgment on defamation claims on the grounds that the only evidence submitted in support of those claims was based on inadmissible hearsay.

53

these statements are subject to a qualified privilege. *See Randall's Food Markets v. Johnson*, 891 S.W.2d 640, 646-647 (Tex. 1995) ("an employer has a conditional or qualified privilege that attaches to communications made in the course of an investigation following a report of employee wrongdoing").

Espinosa's assertion that malice for purposes of the qualified privilege is not an appropriate determination to make on summary judgment is also incorrect. A defendant can invoke the qualified privilege on summary judgment when it establishes that the statements were made with an absence of malice. *See id.* at 646. Aaron's presented evidence on summary judgment that Hooker and Newton, the individuals who allegedly defamed Espinosa during Aaron's internal investigation, did not act with malice and were simply investigating suspected theft by Espinosa and were required to inform relevant witnesses about what Aaron's believed Espinosa had done. (CRS 189.) Espinosa failed to rebut this evidence.

## III. CONCLUSION AND PRAYER

For the foregoing reasons, the Court should affirm the trial court's grant of summary judgment to Aaron's on all of Espinosa's claims and award costs because Espinosa is judicially estopped from pursuing his claims against Aaron's based on his failure to disclose them during his bankruptcy proceedings. In the alternative, the Court should affirm the trial court's grant of summary judgment and costs to Aaron's with respect to the substantive elements of Espinosa's claims for

54

malicious prosecution, intentional infliction of emotional distress, and defamation. In sum, Appellees respectfully request that the judgment be affirmed in all respects and for such additional and further relief, at law or in equity, to which they are justly entitled.

Respectfully submitted,

**JACKSON LEWIS P.C.**

*/s/ Virginia Mixon Swindell*

Virginia Mixon Swindell
Texas Bar No. 00794711
Wedge International Tower
1415 Louisiana, Suite 3325
Houston, TX 77002-7332
(713) 650-0404 (Telephone)
(713) 650-0405 (Facsimile)
swindelv@jacksonlewis.com

Dion Y. Kohler
*Admitted Pro Hac Vice*
Georgia Bar No. 427715
1155 Peachtree Street, Suite 1000
Atlanta, Georgia 30309-3600
(404) 525-8200 (Telephone)
(404) 525-1173 (Facsimile)

**ATTORNEYS FOR APPELLEES**

## CERTIFICATE OF COMPLIANCE

As required by Texas Rule of Appellate Procedure 9.4(i), I certify that this document was produced on a computer using Microsoft Word 2010 and contains 13,401 words, as determined by the computer software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).

/s/ Virginia Mixon Swindell
Virginia Mixon Swindell

## CERTIFICATE OF SERVICE

I certify that on April 2, 2015, I served a copy of this document, Brief of Appellees, on the parties listed below by electronic service and that the electronic transmission was reported as complete. My email address is virginia.swindell@jacksonlewis.com.

Robert Teir
Robert Teir, PLLC
845 FM 517 W, Suite 200
Dickinson, Texas 77539
(832) 365-1191 [Telephone]
(832) 550-2700 [Facsimile]


*/s/ Virginia Mixon Swindell*
Virginia Mixon Swindell

# APPENDIX

REOPEN, CLOSED

## U.S. Bankruptcy Court
## Southern District of Texas (Houston)
## Bankruptcy Petition #: 10-39362

|  |  |
|---|---|
| | *Date filed:* 10/20/2010 |
| *Assigned to:* Jeff Bohm | *Date reopened:* 01/07/2014 |
| Chapter 7 | *Date terminated:* 03/09/2015 |
| Voluntary | *Debtor discharged:* 01/31/2011 |
| Asset | *341 meeting:* 11/29/2010 |
| | *Deadline for objecting to discharge:* 01/28/2011 |
| | *Deadline for financial mgmt. course:* 01/13/2011 |

*Debtor disposition:* Standard Discharge

**Debtor**
**Raymond Fernando Espinosa**
9611 Memorial Crossing Court
Tomball, TX 77375
HARRIS-TX
SSN / ITIN: xxx-xx-6920

represented by **Jared Brent Ynigez**
Law Office of Jared B. Ynigez
P.O. Box 7418
Houston, TX 77248
281-739-9069
Fax : 713-422-2172
Email: jared@jbylawfirm.com

**Trustee**
**Rodney D Tow**
Rodney Tow, PLLC
26219 Oak Ridge Drive
The Woodlands, TX 77380
281-681-9100

represented by **Kimberly Anne Bartley**
Waldron & Schneider, L.L.P.
15150 Middlebrook Drive
Houston, TX 77058
281-488-4438
Fax : 281-488-4597
Email: kbartley@ws-law.com

**Rodney D Tow**
Tow and Koenig PLLC
26219 Oak Ridge Drive
The Woodlands, TX 77380
281-681-9100
Fax : 832-482-3979
Email: rtow@towkoenig.com

**U.S. Trustee**
**US Trustee**
Office of the US Trustee
515 Rusk Ave
Ste 3516
Houston, TX 77002
713-718-4650

represented by **Nancy Lynne Holley**
U S Trustee
515 Rusk St
Ste 3516
Houston, TX 77002
713-718-4650
Email: nancy.holley@usdoj.gov

| Filing Date | # | Docket Text |
|---|---|---|
| 10/20/2010 | <u>1</u><br>(3 pgs) | Chapter 7 Voluntary Petition. Receipt Number O,Fee Amount $299 . Filed by Raymond Fernando Espinosa . (chor) Additional attachment(s) added on 10/21/2010 (espe). (Entered: 10/20/2010) |
| 10/20/2010 | | Receipt Number 178551, Fee Amount $299. (klov) (Entered: 10/20/2010) |
| 10/20/2010 | <u>2</u><br>(1 pg) | Certificate of Credit Counseling (Filed By Raymond Fernando Espinosa ). (Ynigez, Jared) (Entered: 10/20/2010) |
| 10/20/2010 | <u>3</u><br>(1 pg) | Debtor's Payment Advices or Certification under 11 USC 521 (Filed By Raymond Fernando Espinosa ). (Ynigez, Jared) (Entered: 10/20/2010) |
| 10/20/2010 | <u>4</u><br>(2 pgs) | Exhibit D to Petition (Filed By Raymond Fernando Espinosa ). (espe) (Entered: 10/21/2010) |
| 10/20/2010 | <u>5</u><br>(18 pgs) | Summary of Schedules, Statistical Summary of Certain Liabilities, Schedule A , Schedule B , Schedule C , Schedule D , Schedule E , Schedule F , Schedule G , Schedule H , Schedule I , Schedule J (Filed By Raymond Fernando Espinosa ). (espe) (Entered: 10/21/2010) |
| 10/20/2010 | <u>6</u><br>(6 pgs) | Statement of Financial Affairs (Filed By Raymond Fernando Espinosa ). (espe) (Entered: 10/21/2010) |
| 10/20/2010 | <u>7</u><br>(2 pgs) | Statement of Intent (Filed By Raymond Fernando Espinosa ). (espe) (Entered: 10/21/2010) |
| 10/20/2010 | <u>8</u><br>(2 pgs) | Notice to Individual Consumer Debtor Under 342(b) of the Bankruptcy Code. Filed by Raymond Fernando Espinosa (espe) (Entered: 10/21/2010) |
| 10/20/2010 | <u>9</u><br>(1 pg) | Disclosure of Compensation of Attorney for Debtor (Filed By Raymond Fernando Espinosa ). (espe) (Entered: 10/21/2010) |
| 10/20/2010 | <u>10</u><br>(8 pgs) | Chapter 7 Statement of Current Monthly Income and Means Test Calculation - Form 22A . (Filed By Raymond Fernando Espinosa ). (espe) (Entered: 10/21/2010) |
| | | |

| 10/20/2010 | 11 | Statement of Social Security Number Filed. Does this document change the social security number for one or more debtors? NO. Has the Meeting of Creditors been set in this case? NO. (espe) (Entered: 10/21/2010) |
|---|---|---|
| 10/20/2010 | 12 (1 pg) | Certification of Notice to Consumer Debtor(s) under 342(b) of the Bankruptcy Code by Raymond Fernando Espinosa (espe) (Entered: 10/21/2010) |
| 10/20/2010 | 13 (4 pgs) | Creditor Mailing List Loaded. (Filed By Raymond Fernando Espinosa ). (kettac) (Entered: 10/22/2010) |
| 10/26/2010 | 14 (2 pgs) | Initial Order for Prosecution Signed on 10/26/2010 (rsal) (Entered: 10/26/2010) |
| 10/26/2010 | 15 (1 pg) | Notice and Order That Federal Rule 15, as Made Applicable by Bankruptcy Rule 7015, Shall Apply Whenever an Objection to a Proof of Claim Is Lodged. Signed on 10/26/2010 (rsal) (Entered: 10/26/2010) |
| 10/26/2010 | 16 (1 pg) | Notice and Order Regarding Motions to Lift Stay Signed on 10/26/2010 (rsal) (Entered: 10/26/2010) |
| 10/26/2010 | 17 (2 pgs) | Meeting of Creditors, Proof of Claim deadline not set, 341(a) meeting to be held on 11/29/2010 at 09:30 AM at Houston, 515 Rusk Suite 3401. Financial Management Course due:1/13/2011. Last day to oppose discharge or dischargeability is 1/28/2011. (rsal) (Entered: 10/26/2010) |
| 10/28/2010 | 18 (3 pgs) | BNC Certificate of Mailing. (Related document (s):15 Notice and Order That Federal Rule 15 shall apply as applicable.) No. of Notices: 34. Service Date 10/28/2010. (Admin.) (Entered: 10/29/2010) |
| 10/28/2010 | 19 (4 pgs) | BNC Certificate of Mailing - Meeting of Creditors. (Related document(s):17 Meeting of Creditors Chapter 7 No Asset) No. of Notices: 30. Service Date 10/28/2010. (Admin.) (Entered: 10/29/2010) |
| 10/28/2010 | 20 (3 pgs) | BNC Certificate of Mailing. (Related document (s):14 Initial Order for Prosecution) No. of Notices: 1. Service Date 10/28/2010. (Admin.) (Entered: 10/29/2010) |
| 10/28/2010 | | |

| | 21<br>(3 pgs) | BNC Certificate of Mailing. (Related document (s):16 Notice and Order Regarding Motions to Lift Stay) No. of Notices: 34. Service Date 10/28/2010. (Admin.) (Entered: 10/29/2010) |
|---|---|---|
| 11/07/2010 | 22<br>(1 pg) | Notice of Appearance and Request for Notice Filed by Recovery Management Systems Corporation (Singh, Ramesh) (Entered: 11/07/2010) |
| 11/30/2010 | | Meeting of Creditors Held. Debtor appeared, no assets. Hearing concludedon *11/29/2010* (Tow, Rodney) (Entered: 11/30/2010) |
| 11/30/2010 | | Chapter 7 Trustee's Report of No Distribution: I, Rodney D Tow, having been appointed trustee of the estate of the above-named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 1 months. Assets Abandoned (without deducting any secured claims): $ 167270.00, Assets Exempt: Not Available, Claims Scheduled: $ 267745.48, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): $ 267745.48. (Tow, Rodney) (Entered: 11/30/2010) |
| 01/10/2011 | 23<br>(1 pg) | Financial Management Course Certificate Filed (Filed By Raymond Fernando Espinosa ).(Related document(s):17 Meeting of Creditors Chapter 7 No Asset) (smur) (Entered: 01/10/2011) |
| 01/31/2011 | 24<br>(2 pgs) | Order Discharging Chapter 7 Debtor(s) (Admin.) (Entered: 01/31/2011) |
| 01/31/2011 | 25<br>(1 pg) | Final Decree. Bankruptcy Case Closed (Admin.) (Entered: 01/31/2011) |

| 02/02/2011 | 26<br>(4 pgs) | BNC Certificate of Mailing - Order of Discharge. (Related document(s):24 Order Discharging Chapter 7 Debtor(s)) No. of Notices: 26. Service Date 02/02/2011. (Admin.) (Entered: 02/02/2011) |
| --- | --- | --- |
| 02/02/2011 | 27<br>(3 pgs) | BNC Certificate of Mailing. (Related document (s):25 Final Decree. Bankruptcy Case Closed) No. of Notices: 33. Service Date 02/02/2011. (Admin.) (Entered: 02/02/2011) |
| 01/02/2014 | 28<br>(6 pgs; 2 docs) | Motion to Reopen Chapter 7 Case. Objections/Request for Hearing Due in 21 days. Receipt Number O, Fee Amount: $ 260. Filed by Trustee Rodney D Tow (Attachments: # 1 Proposed Order) (Tow, Rodney) (Entered: 01/02/2014) |
| 01/07/2014 | 29<br>(1 pg) | Order Granting Motion To Reopen Chapter 7 Case and Appointing Chapter 7 Trustee (Related Doc # 28) Signed on 1/7/2014. (sgue) (Entered: 01/07/2014) |
| 01/08/2014 | 30<br>(1 pg) | Notice *Of Appointment Of Trustee In A Re-Opened Case.* Filed by US Trustee (Livingstone, Diane) (Entered: 01/08/2014) |
| 01/09/2014 | | Notice of Appointment of Trustee. Rodney D Tow added to the case. (dhan) (Entered: 01/09/2014) |
| 01/09/2014 | 31<br>(3 pgs) | BNC Certificate of Mailing. (Related document (s):29 Order on Motion to Reopen Chapter 7 Case) No. of Notices: 26. Notice Date 01/09/2014. (Admin.) (Entered: 01/10/2014) |
| 01/17/2014 | 32<br>(12 pgs; 4 docs) | Application to Employ Kimberly A. Bartley and the firm Waldron & Schneider, LLP as Trustee's Counsel. Objections/Request for Hearing Due in 7 days. Filed by Trustee Rodney D Tow (Attachments: # 1 Affidavit # 2 Proposed Order # 3 Service List) (Bartley, Kimberly) (Entered: 01/17/2014) |
| 01/17/2014 | 33<br>(8 pgs; 4 docs) | Application to Employ Mark T. Murray and the firm Stevenson & Murray as Trustee's Special Counsel. Objections/Request for Hearing Due in 7 days. Filed by Trustee Rodney D Tow (Attachments: # 1 Affidavit # 2 Proposed Order # 3 Service List) (Bartley, Kimberly) (Entered: 01/17/2014) |
| 01/21/2014 | | |

| | | |
|---|---|---|
| | <u>34</u><br>(10 pgs; 5 docs) | Amended Application to Employ Mark T. Murray and the firm Stevenson & Murray as Trustee's Special Counsel. Objections/Request for Hearing Due in 7 days. Filed by Trustee Rodney D Tow (Attachments: # <u>1</u> Affidavit of Proposed Counsel # <u>2</u> Exhibit A - Fee Agreement # <u>3</u> Service List # <u>4</u> Proposed Order) (Bartley, Kimberly) (Entered: 01/21/2014) |
| 03/11/2014 | | Certificate of Email Notice. Contacted R.D. Tow and K.A. Bartley. Movant to notice all interested parties and file a certificate of service with the court (Related document(s): <u>32</u> Application to Employ, <u>34</u> Application to Employ) Hearings scheduled for 3/25/2014 at 02:00 PM at Houston, Courtroom 600 (JB). (vatt) (Entered: 03/11/2014) |
| 03/14/2014 | <u>35</u><br>(3 pgs) | Notice *of Hearing.* (Related document(s):<u>33</u> Application to Employ, <u>34</u> Application to Employ) Filed by Rodney D Tow (Bartley, Kimberly) (Entered: 03/14/2014) |
| 03/25/2014 | <u>36</u><br>(3 pgs) | Order Authorizing Employment of Counsel(Related Doc # <u>32</u>) Signed on 3/25/2014. (kpico) (Entered: 03/25/2014) |
| 03/25/2014 | <u>37</u><br>(1 pg) | Order Granting Application to Employ Special Counsel Mark T. Murray and the firm Stevenson & Murray (Related Doc # <u>33</u> and # <u>34</u>) Signed on 3/25/2014. (kpico) (Entered: 03/25/2014) |
| 03/25/2014 | | Courtroom Minutes. Time Hearing Held: 2:00 PM. Appearances: M. Murray and K. Bartley. (Related document(s): <u>32</u> Application to Employ Counsel and <u>34</u> Application to Employ Special Counsel). Comments made by parties. Testimony heard by applicants. Orders signed Granting Applications to Employ (docs. <u>32</u> and <u>33/34</u>). Ms. Bartley to notify debtor's counsel to file amended pleadings by April 1, 2014. If pleadings are not timely filed, Ms. Bartley to file motion to compel; Court to set matter for hearing. (kpico) (Entered: 03/25/2014) |
| 03/27/2014 | <u>38</u><br>(4 pgs) | BNC Certificate of Mailing. (Related document (s):<u>36</u> Order on Application to Employ) No. of Notices: 1. Notice Date 03/27/2014. (Admin.) (Entered: 03/28/2014) |
| | | |

| 03/27/2014 | <u>39</u><br>(2 pgs) | BNC Certificate of Mailing. (Related document (s):<u>37</u> Order on Application to Employ) No. of Notices: 2. Notice Date 03/27/2014. (Admin.) (Entered: 03/28/2014) |
|---|---|---|
| 03/31/2014 | <u>40</u><br>(6 pgs) | Amended Schedule B (Filed By Raymond Fernando Espinosa ). (Ynigez, Jared) (Entered: 03/31/2014) |
| 03/31/2014 | <u>41</u><br>(6 pgs) | Amended Statement of Financial Affairs (Filed By Raymond Fernando Espinosa ). (Ynigez, Jared) (Entered: 03/31/2014) |
| 03/31/2014 | <u>42</u><br>(4 pgs) | Certificate *of Service* (Filed By Raymond Fernando Espinosa ).(Related document(s):<u>40</u> Schedule B - Personal Property, <u>41</u> Statement of Financial Affairs) (Ynigez, Jared) (Entered: 03/31/2014) |
| 09/04/2014 | | Notice of Appearance and Request for Notice Filed by Nancy Lynne Holley (Holley, Nancy) (Entered: 09/04/2014) |
| 09/04/2014 | <u>43</u><br>(1 pg) | Trustee's Notice of Assets & Request for Notice to Creditors Proofs of Claims due by 12/8/2014. (Tow, Rodney) (Entered: 09/04/2014) |
| 09/05/2014 | | Notice of Appearance and Request for Notice Filed by Nancy Lynne Holley (Holley, Nancy) (Entered: 09/05/2014) |
| 09/06/2014 | <u>44</u><br>(3 pgs) | BNC Certificate of Mailing. (Related document (s):<u>43</u> Trustee's Request for Notice of Assets) No. of Notices: 24. Notice Date 09/06/2014. (Admin.) (Entered: 09/07/2014) |
| 02/04/2015 | | Chapter 7 Trustee's Report of No Distribution: I, Rodney D Tow, having been appointed trustee of the estate of the above-named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules |

| | | |
|---|---|---|
| | | filed by the debtor(s) or otherwise found in the case record: This case was pending for 13 months. Assets Abandoned: $ 167270.00, Assets Exempt: Not Available, Claims Scheduled: $ 267745.48, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment: $ 267745.48. (Tow, Rodney) (Entered: 02/04/2015) |
| 03/09/2015 | 45 (1 pg) | Final Decree Signed on 3/9/2015 (glyo) (Entered: 03/09/2015) |
| 03/11/2015 | 46 (2 pgs) | BNC Certificate of Mailing. (Related document (s):45 Final Decree) No. of Notices: 1. Notice Date 03/11/2015. (Admin.) (Entered: 03/12/2015) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/01/2015 15:06:16 | | | |
| **PACER Login:** | jl0094:2572603:3938018 | **Client Code:** | 99904 |
| **Description:** | Docket Report | **Search Criteria:** | 10-39362 Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |



## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS

In Re:  Raymond Fernando Espinosa

**ENTERED**
**03/09/2015**

**Debtor(s)**                          Case No.: 10−39362

Chapter:  7

---

### *ORDER CLOSING CASE*

The estate has been fully administered. Therefore, the Court orders:

1. Rodney D Tow is discharged as trustee of the estate.

2. The Trustee's bond is cancelled.

3. The case is closed.

Signed and Entered on Docket: 3/9/15

JEFF BOHM
United States Bankruptcy Judge